IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 95-11210

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

Versus

REGINALD GIST,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

November 22, 1996

Before KING and HIGGINBOTHAM, Circuit Judges, and KAZEN[*], District

Judge.


KAZEN, District Judge:

     Appellant Reginald B. Gist pled guilty to Counts 1 and 5 of a

superseding indictment charging violations of the federal Resource

Conservation and Recovery Act ("RCRA") and the regulations

promulgated thereunder.  His sole complaint on appeal is that for

sentencing under the guidelines, both counts should have been

placed in a "single group" within the meaning of USSG §3D1.2.

Finding no error, we affirm.

_____

     [*]District Judge for the Southern District of Texas, sitting
by designation.

Count 1--Balch Springs.  In August 1986, Appellant Gist and others began operating High Tech Plating, Inc., a zinc-cyanide electroplating business located on leased property in the Dallas suburb of Balch Springs, Texas.  The electroplating process involved liquid solutions containing a number of toxic and corrosive hazardous substances, including acids, cyanides, chromium, and zinc.  Before these liquids could be properly disposed of through the sewer system, they should have been treated with chemicals to precipitate out the metals, neutralize the cyanide, and bring the pH of the acid solutions into an acceptable range.  Instead, High Tech poured plating solutions down the sewer with inadequate or no pretreatment and sometimes simply drained the solutions onto the outside ground.  Also, plating vats sometimes leaked onto the floor, and spilled hazardous wastes were then swept outside.  This conduct continued despite repeated warnings from the Dallas County Water Control and Improvement District No.6 that High Tech's discharge exceeded legal limits for various hazardous substances.  Finally, in October 1989, the District disconnected the sewer line and also required that High Tech submit written plans for future waste disposal, including EPA carrier registration numbers if the waste was to be transported and documentation that the waste was to be disposed of at an EPA-registered and approved facility.

Instead of complying with those requirements, Gist abandoned the High Tech facility in January 1990.  Left behind were 54 vats, containing 72,000 gallons of highly acidic and toxic wastes.  Also

left behind were drums and barrels of unused acids, cyanides, and other chemicals. The EPA subsequently declared the High Tech facility a "Superfund" site under the Comprehensive Environmental Response, Compensation and Liability Act("CERCLA"), *42 U.S.C.* §9601 <u>et seq</u>. The site cleanup cost over $300,000.00.

Count 1 of the superseding indictment charged that on or about January 23, 1990, Gist knowingly disposed of hazardous wastes at High Tech Plating in Balch Springs without having first obtained a permit, by abandoning the Balch Springs facility and leaving the hazardous wastes at the abandoned facility. 42 U.S.C. §6928(d)(2)(A).

<u>Count 5--Forney</u>. Even before abandoning High Tech Plating at Balch Springs, Gist leased a facility at the Forney Industrial Park in Forney, Texas, where he started Metal Plating Systems, Inc., which operated from January 1990 to August 1992. This site also generated large quantities of hazardous wastes, including spent cyanide plating bath solutions and treatment sludges. When the septic tank filled with plating sludge and the sewage field backed up, Gist would pump used plating solution into truck tanks and discharge it elsewhere. Once, for example, he pretended to be washing a truck at a car wash while he opened the valve on the truck and allowed the hazardous solution to pour into the sewer drain. He also caused an employee to drive on a country road at night while draining solution from the back of the truck. Finally, he disposed of wastes by transporting them to property he owned at Lake Fork, Texas, where the wastes were burned, buried and drained

3

onto the ground.

Count 5 charged that from approximately July 1991 to March 1993, Gist knowingly transported hazardous waste from Metal Plating Systems at Forney to a location at Lake Fork, Texas, a facility which did not have a permit. 42 U.S.C.§6928 (d)(1).

The Sentence Calculation. The Presentence Report scored Counts 1 and 5 under USSG §2Q1.2. Making appropriate adjustments for specific offense characteristics and role in the offense, Count 1 was scored at an offense level of 24 and Count 5 at offense level 20. Using USSG §3D1.4, the combined offense level for the two counts was adjusted from 24 to 26. A 3-level downward adjustment was made for acceptance of responsibility, and Gist was sentenced at guideline level 23 to 51 months' confinement. Gist argues that under USSG 3D1.2, Counts 1 and 5 should have been combined into a single group, which would have yielded an offense level of 24 and ultimately a sentence at guideline level 21.

USSG §3D1.2(b)--Same Victim? Gist argues that Counts 1 and 5 should have been grouped because they involve the same victim. USSG §3D1.2(b) He invokes the Commentary, Application Note 2, which states that where there are "no identifiable victims," the victim is "the societal interest that is harmed" and that counts should be grouped when those societal interests are closely related.

As the Government notes, when Gist abandoned the High Tech Plating site, leaving behind corroded vats, drums and soil, the victims included the landlord, surrounding landowners and their

4

families, and the EPA which spent over $300,000.00 in cleanup cost. The conduct addressed in Count 5 involved a different facility at a different location and at a later time. Different surrounding landowners and recreational users of a nearby lake were victims of Gist's illegal conduct in Count 5.

We conclude that the district court correctly found identifiable victims in this case, that those victims were different in Counts 1 and 5, and that USSG §3D1.2(b) was therefore inapplicable.

USSG §3D1.2(d)--Ongoing Behavior? Gist's more cogent argument involves USSG §3D1.2(d), which provides for offense grouping "if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior". For both Counts 1 and 5, the presentence report increased the base offense level by 6 under a specific offense characteristic applied when an offense resulted in an "ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance". USSG §2Q1.2(b)(1)(A). Gist argues that this specific offense characteristic triggers the application of §3D1.2(d). We disagree.

USSG §3D1.2 is not a model of clarity, and the extensive Commentary which follows it does not discuss the particular phrase in Subsection (d) upon which Defendant relies. Nevertheless, several observations are pertinent. First, the penultimate paragraph in the Commentary states that a "primary consideration" militating against grouping is whether the offenses involve different victims. Next, §3D1.2 lists several guidelines which are

explicitly intended to be grouped under Subsection (d). USSG §2Q1.2 is not one of these. Accordingly, a sentencing court is required to make "a case-by-case determination...based on the facts of the case" to determine whether grouping is appropriate. Further, the Commentary, Application Note 6, discussing Subsection (d) of §3D1.2 contains this example: "(7) The defendant is convicted of three counts of discharging toxic substances from a single facility. The counts are to be grouped together." By implication, counts charging a defendant with discharging toxic substances from different facilities at different times would not be grouped together.

Because Gist's criminal conduct was "ongoing" at the Balch Springs site and was also "ongoing" at the Forney/Lake Fork site, the district court properly applied the specific offense characteristic in §2Q1.2(b)(1)(A) to each count. Nevertheless, the criminal conduct charged with Counts 1 and 5 involved separate victims injured at different locations on different dates, and the district court properly declined to group the counts under §3D1.2.

Judgment is AFFIRMED.