**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-50817

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR CLARK,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

June 3, 1999

Before JONES, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This appeal requires us to resolve whether the district court erred in determining that the two United States Marshals whose arrest Defendant-Appellant Victor Clark ("Clark") resisted were the primary "victims" of Clark's offense. The court below held that they were, which prevented "grouping," for sentencing purposes, of the two counts of his conviction. Finding no error, we affirm the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 1997, Deputy U.S. Marshals Darren Sartin and Matt Merkle ("Merkle")

attempted to execute a federal arrest warrant on Clark for violating the conditions of his supervised release. Clark was uncooperative as demonstrated by his refusal to obey numerous commands to put both hands behind his back so that the officers could handcuff him. Clark also made threatening and abusive statements to the marshals and reached into his right front pocket. He refused to take his hand out of his pocket when instructed to do so which prompted Merkle to withdraw his baton. Clark eventually withdrew his hand from his pocket yet continued to shout expletives at the officers. After a scuffle, in which Clark was subdued by pepper spray, the marshals restrained him.

On December 15, 1997, Clark pled guilty to an indictment charging him with two counts of resisting arrest in violation of 18 U.S.C. § 111 (1996). The probation office prepared a Presentence Report ("PSR") which reflected a combined offense level of nine and a criminal history category of III.[1] The applicable guideline range of imprisonment was eight to fourteen months. Clark objected to the PSR, and in particular to the multiple-count adjustment. He argued that separating the two counts of resisting arrest into two "groups" was contrary to § 3D1.2 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") since the counts of conviction arose from a single arrest incident. Cf. U.S. SENTENCING GUIDELINES MANUAL § 3D1.2 (1998) (providing that all counts involving substantially the same harm shall be grouped together into a single group). According to Clark, the fundamental aim of 18 U.S.C. § 111 was not to protect individual governmental officers, but to guard against the victimization of "government and its functions." As a result, Clark explained, the officers were only "indirect or secondary victims" within the meaning of the relevant

---

[1]Clark's base offense level for each count was six. Three points were added because the offense involved "physical contact" bringing the adjusted offense level to nine. The offenses were to be "grouped" separately for purposes of a multiple-count adjustment, which resulted in a two-point increase and a combined adjusted offense level of eleven. Clark received a two-level reduction for acceptance of responsibility. These calculations resulted in an adjusted offense level of nine.

guideline commentary.[2]  Under Clark's analysis, there was only a single victim; thus, the two counts should have been "grouped" together.

The magistrate judge overruled the objection and sentenced Clark to concurrent twelve-month prison terms, one year of supervised release, and a $1,000.00 fine.[3]  Clark appealed to the district court, which affirmed the imposed sentence.  Clark timely filed a notice of appeal to this court.

DISCUSSION

This court reviews factual findings made by a district court for sentencing purposes for clear error and its legal application of the Guidelines *de novo*.  See United States v. Haas, 171 F.3d 259, 268 (5th Cir 1999).

The purpose of the Guidelines provisions for grouping offenses is "to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offenses." U.S. SENTENCING GUIDELINES MANUAL § 3D introductory comment.  In relevant part, the Guidelines provide:

> All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule:
>
> (a)  When counts involve the same victim and the same act or transaction.
>
> (b)  When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

Id. at § 3D1.2 (a), (b).  Once grouped, the court applies the offense level applicable to each "group"

_____

[2]In explaining the term "victim," application note 2 of the commentary to U.S.S.G. § 3D1.2 provides: "The term 'victim' is not intended to include indirect or secondary victims."  U.S. SENTENCING GUIDELINES MANUAL § 3D1.2 application note 2 commentary.

[3]Clark consented to proceed before a magistrate through sentencing.

of counts. See id. § 3D1.3. The defendant's combined offense level "is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated" in a table created for that purpose. See id. § 3D1.4.

Clark argues to this court, as he did below, that a Deputy United States Marshal is not a "victim" of the offense of resisting arrest; on the contrary, the United States Government is the victim. To reach this conclusion, he encourages this court to look at the legislative intent behind 18 U.S.C. § 111. He also relies on Ladner v. United States, 358 U.S. 169 (1958), to argue that the primary focus of the statute is the protection of federal authority and that the deputy marshals were only "secondary" or "indirect" victims of the offense.[4] Since the government is the "same victim" and the two resisting-arrest offenses are a part of the "same act or transaction" or "common scheme or plan," Clark reasons that the two counts should have been considered as a single group. See id.

In United States v. Norris, 159 F.3d 926, 927-31 (5th Cir. 1998), cert denied sub nom. Norris v. United States, — U.S.—, 119 S.Ct. 1153 (1999), this court addressed the meaning of the word "victim" for purposes of § 3D1.2 in a case involving a conviction on ten counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) (1996). In addressing whether the children depicted in the seized pornography were individual "victims," this court looked to both the text of the statute and to case authority predating the Guidelines. Following a similar path,[5] we look to both

---

[4]In Ladner, the Court held that the single discharge of a shotgun alleged by the petitoner constituted only a single violation of § 254. In reaching this decision, the Court found that the statue "may reasonably be read to mean that the single discharge would constitute 'assault' without regard to the number of federal officers affected, as it may be read to mean that as many 'assaults' would be committed as there were officers affected." 358 U.S. at 177. Given this ambiguity, the Court applied a "policy of lenity" and adopted the less harsh meaning. See id.

[5]"When courts interpret statutes, the initial inquiry is the language of the statute itself." Hightower v. Texas Hosp. Ass'n, 65 F.3d 443, 448 (5th Cir. 1995).

the statute and to the Supreme Court's decision in Ladner.[6]

In relevant part, the text of 18 U.S.C. § 111 reads:

> (a)       In general. —Whoever—
> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties. . . .
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. §111(a)(1). This section, prohibiting assault against federal officers, was enacted both to protect federal officers and federal functions. See U. S. v. Feola, 420 U.S. 671 (1975). Deputy United States Marshals are undoubtedly officers within the meaning of 18 U.S.C. § 111. See 18 U.S.C. § 1114 (1996) (including deputy marshals as federal officers within the Department of Justice). Examining only the plain meaning of the statute, we conclude that the officer is the object of the verbs utilized in the statute. Accordingly, it is not only the officer who is the victim of the proscribed conduct but also, by extension, the United States. On this basis, we reject Clark's contention that the officers are indirect or secondary victims. Both deputy marshals were affected in some measure by the protracted struggle to subdue and to arrest Clark.

---

[6]We disagree with the district court, which found Ladner "interesting" but without "real application" because it predates the Guidelines. The fact that a case predates the Sentencing Guidelines does not obviate the need for further consideration or analysis by the courts especially where, as here, the case is instructive. See, e.g., Witte v. United States, 515 U.S. 389, 395-403 (1995) (relying on pre-Guidelines cases governing sentencing discretion to permit inclusion of prior criminal conduct in "relevant conduct" determination); United States v. Dunningan, 507 U.S. 87, 92, 94-95 (1993) (relying on pre-Guidelines case law and statutes to define "perjury" in Guidelines commentary); United States v. Lister, 53 F.3d 66, 69 (5th Cir. 1995) (relying on pre-Guidelines case law to interpret term "willful" in obstruction-of justice Guideline).

Additionally, while Ladner is instructive in this case, it is far from controlling.  In Ladner, the Supreme Court addressed the issue whether a single shotgun blast which wounded two federal agents could constitute two separate assaults under 18 U.S.C. § 254 (1940).[7]  See Ladner, 358 U.S. at 171.  In its discussion, the Court acknowledged that a plausible argument could be made that the Congressional aim of § 254 was "to prevent hindrance to the execution of official duty, and thus to assure the carrying out of federal purposes and interests, and was not to protect federal officers except as incident to that aim."  Id. at 175-76.  Yet the Ladner court did not expressly hold that the "victim" in federal resisting-arrest offenses is the federal government.  See id. at 178 (holding that the wording of the statute and its legislative history is ambiguous).  Indeed, the sparse legislative history rendered the government's argument that the statute was designed to protect individual officers equally plausible.  See id. at 174-75.  Given these reasonable alternative readings of the statute, the Court applied the rule of lenity and adopted the less harsh meaning.[8]  See id. at 177, 178 ("This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.")

Clark invites this court to follow a similar rationale; however, unlike the Court in Ladner, we are aided by subsequent case law in resolving this matter.  In Feola, the Supreme Court limited its

---

[7]This statute is a predecessor to 18 U.S.C. § 111.

[8]It is interesting to note that, after the Ladner decision was issued, Ladner's co-defendant Cameron filed his own § 2255 motion challenging similar consecutive sentences.  See Cameron v. United States, 320 F.2d 16, 17 (5th Cir. 1963).  After an evidentiary hearing, the district court concluded that five shots were fired by the two defendants and that "two separate and distinct assault and batteries were committed upon two officers separately."  Id. at 18.  This court affirmed the district court's ruling that Cameron was not entitled to relief.  See id.

holding in <u>Ladner</u> by concluding that, "although we adhere to the conclusion in <u>Ladner</u> that either view of legislative intent is 'plausible,' we think it plain that Congress intended to protect both federal officers and federal functions, and that, indeed, furtherance of the one policy advances the other." <u>Feola</u>, 420 U.S. at 679.  In like manner, this court held in <u>United States v. Varkonyi</u>, 645 F.2d 453, 456-57 (5th Cir. 1981), that 18 U.S.C. § 111 was designed to protect both federal officers and federal functions.

Based on our reading of these cases and the statute, we find that any federal officer whose efforts to arrest a defendant are resisted in violation of 18 U.S.C. § 111 is a victim.  In accord with the commentary to U.S.S.G. § 3D1.2, we find that each deputy marshal was a victim of the offense as the persons directly and most seriously affected by the struggle to subdue Clark.[9]  <u>See</u> U.S.

_____

[9]Inasmuch as commentary explains the guidelines and provides concrete guidance as to how the guidelines are to be applied in practice, <u>see</u> <u>Stinson v. United States</u>,  508 U.S. 36, 44 (1993), we find the background commentary to § 3D1.2 especially instructive:

> A primary consideration in this section is whether the offenses involve different victims.  For example, a defendant may stab three prison guards in a single escape attempt.  Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because it probably would require a departure in many cases in order to capture adequately the criminal behavior.  Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each count should be treated separately rather than grouped together.

U.S. SENTENCING GUIDELINES MANUAL § 3D1.2 background comment.  Clark's perceived conflict between this background commentary and § 3D1.2 as promulgated by the Sentencing Commission is without merit.  We have already determined that the officers are direct, as opposed to secondary or indirect, victims under 18 U.S.C. § 111.  Moreover, the nature of Clark's offense appears to fall squarely within the illustrative example provided.  There was no basis to group his offenses for purposes of sentencing.

98-50817.opn                                    7

SENTENCING GUIDELINES MANUAL § 3D1.2 application note 2.

<u>CONCLUSION</u>

We find that for purposes of an 18 U.S.C. § 111 violation, each federal officer is a separate and distinct victim of the offense. Accordingly, the sentencing court is not required to group the offenses under U.S.S.G. § 3D1.2. We AFFIRM.