249 F.3d 106 (2nd Cir. 2001)
 UNITED STATES OF AMERICA, APPELLEE,
v.
EILEEN KALUST, JOSE DIAZ, RADHAMES MELO, AKA "RADMES", AKA "RAYMOND", AKA "RADHMES", AKA "MELO", AKA "ERNESTO", AKA "RHADAMES", ELIAS ABREU, AKA "ALBINO", AKA "ROBERTO ABREU", ALL IN ONE AUTO, DEFENDANTS, MAURIZIO PERCAN, DEFENDANT-APPELLANT.
 Docket No. 00-1232
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: January 9, 2001
May 3, 2001
 
 Maurizio Percan appeals from a judgment of the United States District Court for the Southern District of New York (Allen G. Schwartz, Judge) sentencing him to 108 months in prison. Percan contends that the district court erred by (1) failing to group his offenses under U.S.S.G. § 3D1.2, (2) denying him a downward departure under U.S.S.G. § 5K2.0, and (3) enhancing his offense level by four points under U.S.S.G. § 3B1.1(a).
 Affirmed.
 Irving Cohen, New York, NY, for appellant.
 Mylan L. Denerstein, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York (Ronnie Abrams, Cathy Seibel on the brief) for appellee.
 Before: Van Graafeiland, Winter, and Calabresi, Circuit Judges.
 
 
 1
 Judge Winter concurs in a separate opinion.
 
 Calabresi, Circuit Judge
 
 2
 Appellant Maurizio Percan ("Percan") was convicted, after a jury trial, on seventeen counts of criminal activity related to his participation in a conspiracy to steal automobile airbags and resell them to the public. He was subsequently sentenced to 108 months in prison. In this appeal, Percan challenges his sentence on three grounds. First, he contends that, under U.S.S.G. § 3D1.2, the district court should have grouped his convictions related to transportation of stolen property with his convictions for money laundering. Second, he argues that the district court committed an error of law in refusing to grant him a downward departure, under U.S.S.G. § 5K2.0, on the ground that his money laundering conduct was outside the heartland of the money laundering guidelines. Finally, he challenges the district court's application of a four level sentence enhancement under U.S.S.G. § 3B1.1. In this respect, Percan claims that the court's conclusion that he was the leader or organizer of criminal activity involving five or more participants was erroneous.
 
 BACKGROUND
 
 3
 On April 17, 1998, appellant was charged, in a seventeen count indictment, with transportation of stolen goods in interstate commerce in violation of 18 U.S.C. §§ 2314 and 2, money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1957, and 2, and conspiracy to commit these offenses. The evidence adduced at trial, much of it presented through the testimony of cooperating co-conspirators, demonstrated that Percan purchased over one million dollars worth of airbags from defendants Abreu, Acosta, Diaz, and Melo ("the airbag thieves"), who had stolen thousands of airbags from cars parked on the streets of New York and from dealer lots.[1] Through his business, All in One Auto Parts, Inc. ("All in One Auto"), Percan then resold the airbags to customers in all fifty states. The evidence showed that Percan laundered the proceeds of his sales through the bank accounts of All in One Auto and that the money from the airbag sales was used to promote the ongoing conspiracy.[2]
 
 
 4
 On September 24, 1999, a jury in the United States District Court for the Southern District of New York convicted Percan on all counts. At Percan's sentencing hearing, appellant's counsel objected to the Probation Department's recommendation that, for purposes of U.S.S.G. § 3D1.2, the money laundering counts and the counts related to interstate transportation of stolen goods constituted two distinct groups of offenses. Percan objected to the separation of his convictions into different groups because, if approved by the court, this would result in a two point increase in his guidelines level. See U.S.S.G. § 3D1.4. Percan argued that, because the transportation of stolen goods and money laundering activities involved "substantially the same harm" and were "so intertwined that they cannot be separated," they should be considered a single group for sentencing purposes. Appellant's counsel also requested a downward departure on the ground that, because Percan's money laundering conduct involved a simple "receipt and deposit" of funds, it was "beyond the heartland of circumstances for which the money laundering guideline was intended." Finally, Percan contended that he did not supervise the airbag thieves, and, therefore, he should not be given a four level guidelines enhancement for being a leader of criminal activity involving five or more participants.
 
 
 5
 The district court rejected all of Percan's arguments. Judge Schwartz found that, under our decision in United States v. Napoli, 179 F.3d 1 (2d Cir. 1999), the victims of Percan's money laundering activities were distinct from the victims of his conduct with respect to transporting stolen goods, and hence, these counts did not involve "substantially the same harm" for purposes of the guidelines. As a result, the court held that grouping Percan's convictions under U.S.S.G. § 3D1.2 was not appropriate. With respect to Percan's request for a downward departure, the court concluded that "what happened here is within the heartland of the money laundering guidelines." Judge Schwartz explained that "the arguments made [by Percan] . . . in my discretion, and in the law do not [merit] a downward departure." Judge Schwartz also held that an enhancement under § 3B1.1 was appropriate because Percan "was the organizer and the leader of this criminal activity and there is overwhelming evidence to that effect." In reaching this conclusion, he noted that Percan "clearly supervised" the airbag thieves, and he emphasized that at times Percan "told the[] airbag thieves . . . what types of airbags he needed."
 
 
 6
 Percan's offense level was set at thirty, and he was determined to be in criminal history category II. Accordingly, he was sentenced to 108 months in prison.
 
 DISCUSSION
 
 7
 On appeal, Percan reiterates each of the three challenges to his sentence that were presented below.
 
 
 8
 In United States v. Napoli, this court addressed the question of whether counts of fraud and money laundering should be grouped. We acknowledged the existence of a split among the circuits with respect to this question. See Napoli, 179 F.3d at 7 (citing United States v. Wilson, 98 F.3d 281, 283 (7th Cir. 1996) (permitting grouping); United States v. Mullens, 65 F.3d 1560, 1564 (11th Cir. 1995) (same); United States v. Leonard, 61 F.3d 1181, 1186 (5th Cir. 1995) (same); United States v. Hildebrand, 152 F.3d 756, 763 (8th Cir. 1998) (rejecting a request to group money laundering and fraud counts); United States v. O'Kane, 155 F.3d 969, 972-73 (8th Cir. 1998) (same); United States v. Kunzman, 54 F.3d 1522, 1531 (10th Cir. 1995) (same); United States v. Lombardi, 5 F.3d 568, 570 (1st Cir. 1993) (same)). And we joined the First, Eighth, and Tenth Circuits in denying grouping. Id. at 7.
 
 
 9
 Our holding in Napoli was predicated on the requirement in U.S.S.G. § 3D1.2(b) that, for grouping to be appropriate, the counts must "involve the same victim." We concluded that "[t]he `victims' of fraud counts are those persons who have lost money or property as a direct result of the fraud," while "[t]he `victim' of money laundering is, by contrast, ordinarily society at large."[3] Id. at 7. Appellant presents two arguments to support his claim that Napoli does not control this case.
 
 
 10
 First, he contends that, because Napoli involved so-called "concealment" money laundering under 18 U.S.C. § 1956(a)(1)(B), whereas his conviction related to "promotion" money laundering under 18 U.S.C. §§ 1956(a)(1)(A)(i), the grouping analyses differ. Specifically, appellant urges that in "concealment" cases, "the act of money laundering is typically separate from the underlying criminal conduct," while "money laundering [that] involves promotion of illegal conduct . . . is typically not independent of the underlying criminal activity." In the latter class of cases, appellant claims, there is "a single ongoing course of criminal activity" and so grouping is called for.
 
 
 11
 Percan explains that in "concealment" cases, the money laundering at issue "harms society's interest in discovering and deterring criminal conduct, because by laundering the proceeds of crime, the criminal vests that money with the appearance of legitimacy." Appellant's Br. at 20 (citing O'Kane, 155 F.3d at 972). In contrast, Percan argues, in "promotion" cases such as this one, "none of these interests [is] implicated," because the "money laundering activity [does not] have the effect of making the underlying [crime] more difficult to detect." Id.
 
 
 12
 Like the district court, however, we do not agree with appellant that the victims of Percan's conduct in transporting stolen airbags are the same as the victims of his money laundering activity. Cf. United States v. Green, 225 F.3d 955, 960 (8th Cir. 2000) ("Reinvestment itself does not make the victim of money laundering the same as the victim of fraud, although it certainly allows the criminal to increase the number of his fraud victims."). Moreover, by depositing the proceeds of the airbag sales in All in One Auto's bank accounts, Percan attempted to give these funds "the appearance of legitimacy." Id. As a result of this appearance, society's interest in "discovering and deterring criminal conduct" was harmed, just as it is in concealment cases.
 
 
 13
 Significantly, while there is a circuit split with respect to the question of whether, as a general matter, money laundering and fraud counts ought to be grouped for sentencing purposes, see supra p. 5, none of the circuits has, to date, adopted a regime under which promotion money laundering results in grouping, while concealment money laundering does not.[4] And we see no basis for drawing such a distinction.
 
 
 14
 Our conclusion also finds support in the language of the Introductory Commentary to U.S.S.G. § 3D. There, the Sentencing Commission explains that "[t]he rules in this Part seek to provide incremental punishment for significant additional criminal conduct." In this case, if the district court had grouped all of Percan's convictions, then his offense level would have been 28, just as it would have been had he only engaged in money laundering and not interstate transportation of stolen goods as well. By separating appellant's offenses into two groups, the district court properly provided for incremental punishment, based on the fact that Percan's violations of 18 U.S.C. §§ 2314 and 2 constituted significant additional criminal conduct above and beyond his money laundering. See Green, 225 F.3d at 959.
 
 
 15
 Second, appellant contends that, even if we decline to draw a categorical distinction between concealment and promotion money laundering, it is still possible, after Napoli, to group all of his convictions. In pressing this claim, Percan relies on the footnote in Napoli that reserved decision on whether, in some circumstances, money laundering is "so highly interwoven into a fraud scheme that the fraud victim is the direct victim of the money laundering as well." Napoli, 179 F.3d at 8 n.3. Appellant claims that his is just such a case and, therefore, that grouping is in order.
 
 
 16
 We disagree. Percan's money laundering activity and his participation in the stolen airbag conspiracy can only be viewed as more interwoven than the money laundering and fraud at issue in Napoli insofar as this case involves promotion, and Napoli concealment, money laundering. And, as we have already said, that distinction does not undermine the reasoning of Napoli. That is, it does not, on its own, make the victims of the two crimes the same for grouping purposes.
 
 
 17
 Appellant's other claims can be dealt with summarily. Ordinarily, we lack jurisdiction to review a district court's denial of a downward departure. See, e.g., United States v. Lawal, 17 F.3d 560, 562 (2d Cir. 1994). "The only exceptions to this rule are . . . where the defendant shows that a violation of law occurred, that the Guidelines were misapplied, or that the refusal to depart was based on the sentencing court's mistaken conclusion that it lacked the authority to depart." United States v. Zapata, 135 F.3d 844, 846 (2d Cir. 1998) (internal quotation marks omitted) (alteration in original). The district court's conclusion that Percan's money laundering activity fell within the heartland suffers from none of these defects and we, therefore, lack jurisdiction to review it.[5]
 
 
 18
 Finally, we affirm, for substantially the reasons the district court gave, its decision that a four level sentence enhancement, under U.S.S.G. § 3B1.1, was proper.
 
 
 19
 * * *
 
 
 20
 The judgment of the district court is AFFIRMED.
 
 
 
 NOTES:
 
 
 [1]
 On occasion, Percan provided the thieves with lists of particular airbags he wanted.
 
 
 [2]
 The conspiracy was furthered by using the profits from the sale of stolen airbags to pay some of All in One Auto's expenses and to pay the airbag thieves for stealing the goods. Defendant Eileen Kalust, the bookkeeper at All in One Auto, was also charged in the indictment for her role in facilitating the accounting relating to the airbag sales.
 
 
 [3]
 In this respect, we relied on Application Note 2 to U.S.S.G. § 3D1.2, which states that "[t]he term `victim' is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims . . . the `victim' for purposes of [the relevant Guidelines] is the societal interest that is harmed." U.S.S.G. §3D1.2, App. Note 2, cited in Napoli, 179 F.3d at 7.
 We also explained, in a footnote, that it was not necessary to "decide . . . whether we agree with those circuits that have held that the function of money laundering can sometimes be so highly interwoven into a fraud scheme that the fraud victim is the direct victim of the money laundering as well, and the counts should be grouped together." Id. at 8 n.3.
 
 
 [4]
 The question appears to be an open one in the Seventh Circuit. See United States v. Emerson, 128 F.3d 557, 564-65 (7th Cir. 1997).
 Permitting grouping in promotion, but not in concealment, cases, as defendant requests, would, incidentally, have the perverse effect of subjecting to sentence enhancements those who launder the proceeds of their criminal conduct and then cease their unlawful activities, while not enhancing the sentences of those, like Percan, who launder the proceeds of their criminal conduct in order to use the laundered funds to fuel additional criminal activity.
 
 
 [5]
 Appellant attempts to rest appellate jurisdiction on the notion that a departure was required in this case because his conduct was outside the heartland as a matter of law. He buttresses this claim by pointing to a Justice Department memorandum to Congress indicating that "a modification of the guidelines might be appropriate to address . . . `receipt and deposit cases.'" Appellant also cites a number of cases deeming "receipt and deposit cases" to fall outside the heartland of the money laundering guideline.
 These arguments fail to persuade. First, the fact that the Justice Department manifested a desire to see the guideline changed for "receipt and deposit" cases is a far cry from placing such cases outside the heartland under the existing Guidelines. In addition, and obviously, the fact that some courts have concluded that certain "receipt and deposit" cases are outside the heartland, see, e.g., United States v. Woods, 159 F.3d 1132, 1133-34 (8th Cir. 1998), does not mean that all cases that fit into this category merit similar treatment for sentencing purposes, and do so as a matter of law.
 
 
 
 21
 WINTER, Circuit Judge, concurring in the result:
 
 
 22
 I write separately because I view the pertinent issue somewhat differently from my colleagues. However, my analysis does not affect the result. I therefore concur.
 
 
 23
 a) Designation of Victim
 
 
 24
 First, in my view the victim of so-called promotion money-laundering is not society at large, at least on the present facts. To group counts under Subsection 3D1.2(b), the "counts [must] involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). The following Commentary accompanies the Subsection:
 
 
 25
 The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related. Id. § 3D1.2, cmt. n. 2.
 
 
 26
 id. Therefore, society is the victim under the Guidelines only by default when no direct victim can be identified. See, e.g., United States v. Hibbler, 159 F.3d 233, 237 (6th Cir. 1998) ("Only in those instances where there is no identifiable victim should a court deem the primary victim to be society.").
 
 
 27
 Given these criteria, the caselaw that identifies society as the victim of so-called concealment money-laundering makes sense. Concealment laundering follows a crime and by itself has no identifiable victim. Moreover, unpenalized use of a sophisticated and complex system of financial institutions to disguise and transfer funds derived from criminal activity would provide a general incentive to engage in the whole universe of crimes involving monetary gain. It is therefore fair to say that the victim of concealment money-laundering is society at large.
 
 
 28
 Promotion money-laundering is rather different. The criminal acts here are the use of financial institutions to process the proceeds of prior crimes, to facilitate future crimes. See 18 U.S.C. §§ 1956(a)(1)(A)(i), 1957(a). Indeed, "laundering" is a complete misnomer because the future crimes will occur whether the defendant violates the statute by depositing the proceeds in a bank account or avoids the statute's prohibitions by keeping them under a mattress at home.[1] Far from disguising ill-gotten cash, depositing the fruits of a crime in a bank account openly controlled by the defendant, as occurred here, leaves an incriminating paper trail for investigators in the first place they would look. One suspects that promotion money-laundering has been made a crime not because it by itself alters the character of the underlying crimes, conceals the proceeds of those crimes (rather, it provides a permanent record of them), or creates incentives to engage in criminal activity generally but because it relieves the government of having to offer extensive proof of underlying crimes. For example, the present indictment contains only two stolen goods counts and fifteen money laundering counts, although Percan's thefts of airbags numbered in the thousands.
 
 
 29
 Because promotion money-laundering, by definition, results in identifiable, additional crimes, it usually produces identifiable victims, and did so here, namely, the successive victims of Percan's airbag thefts. My colleagues agree that those from whom airbags were stolen -- the victims of at least the interstate transportation of stolen goods counts -- are discrete individuals. Therefore, because the fruits of earlier thefts were deposited by Percan in his company's bank account and used to finance the theft of more airbags from later victims, the later, identifiable, victims of the airbag thefts also were victims of the promotion laundering. To be sure, societal interests were harmed every time Percan's conspiracy fed upon its past fruits to add more victims. However, where there is harm to both society and identifiable victims, the Guidelines' Commentary expressly states that the proper victim, for sentencing purposes, is the individual.
 
 
 30
 U.S.S.G. § 3D1.2(b) requires that counts have the same victim if they are to be grouped. My colleagues' position, that individuals are the victims of the stolen-goods scheme while society is the victim of the promotion money-laundering, renders grouping under Subsection (b) inappropriate. My position -- that the victims of Percan's promotion money-laundering are those from whom airbags were stolen rather than society -- alters the grouping analysis but leads to the same result.[2] As the present indictment is framed, it is difficult to say that the victims of the two airbag theft counts, those "directly and most seriously affected by the offense," U.S.S.G. § 3D1.2, cmt. n. 2, are the same as the victims of the fifteen laundering counts. With respect to the stolen goods counts, the indictment charges Percan with conspiring to and carrying out a conspiracy to transport stolen goods in interstate commerce from May 1995 until approximately April 1998. Each money laundering count, however, focuses on a narrower timeframe. Nine of the fifteen money laundering counts allege laundering beginning in January 1996; four allege it beginning in February 1996; one alleges it beginning in March 1996; and one alleges it beginning as late as December 1997. Clearly, an individual from whom an airbag is stolen today is not a victim of promotion money-laundering that begins tomorrow. Thus, we cannot say that every victim of the acts alleged in the stolen goods counts, which began in 1995, also is a victim of all of the acts alleged in the laundering counts, some of which began as late as 1997.
 
 
 31
 Because the victims of the successive airbag thefts were a series of different individuals -- rather than, say, a single airbag manufacturer -- grouping under Subsection 3D1.2(b) would be impermissible even if the indictment contained a count for each theft, unless it also contained the corresponding laundering counts. See id., cmt. background ("Counts involving different victims . . . are grouped together only as provided in subsection (c) or (d)."); see also United States v. Clark, 178 F.3d 290, 293-94 (5th Cir. 1999) (holding two counts of resisting arrest arising from single incident should not have been grouped under Subsection 3D1.2 (a) or (b) because there were two separate victims of defendant's resisting arrest, the two deputy marshals); United States v. Edmonds, 103 F.3d 822, 826 (9th Cir. 1996) (refusing to group under Subsection 3D1.2(b) where "more than one victim suffered because of [defendant's] mischief," since defendant's making of false statements to law enforcement officials harmed both those about whom defendant spoke as well as those to whom he lied); United States v. Gist, 101 F.3d 32, 34 (5th Cir. 1996) (rejecting grouping under Subsection 3D1.2(b) where defendant disposed of hazardous waste at two different sites, thereby affecting different victims in different neighborhoods); United States v. Brown, 14 F.3d 337, 341 (7th Cir. 1994) (holding two counts of kidnapping could not be grouped under Subsection 3D1.2(b) where each count alleged kidnapping of a different victim). Because grouping the stolen goods counts with the money laundering counts was improper, I agree with the result reached by my colleagues.
 
 
 32
 b) Grouping the Laundering Counts
 
 
 33
 Viewing the victims of Percan's promotion money-laundering as individuals who had airbags stolen from them, rather than society, has other consequences. In the Presentence Investigation Report, the Probation Office recommended that the two stolen goods counts be grouped under Subsection 3D1.2(d) and that the fifteen money laundering counts be separately grouped under Subsection 3D1.2(b). The seventeen counts were thus consolidated in two groups. The district court accepted this recommendation, and neither Percan nor the government questions the original grouping into two groups. (Percan challenges only the failure to group all counts under Subsection (b).) However, I regard the grouping of the money laundering counts under Subsection (b) as plain error. See Fed. R. Crim. P. 52(b).
 
 
 34
 As noted, Subsection 3D1.2(b) requires that every count have the same victim in order for grouping to occur. For the reasons set out above, the fifteen money laundering counts do not each have the same victim. Nevertheless, these counts could have properly been grouped under Subsection (d), which allows grouping "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. § 3D1.2(d). The Subsection also lists certain offenses that are to be grouped under it, and the Guidelines sections covering the types of money laundering alleged in this case, Sections 2S1.1 and 2S1.2, are explicitly listed under (d) as offenses that should be grouped. Under Section 2S1.1, the base offense level may be increased from 23 to as high as 36, depending on the amount of money laundered. Under Section 2S1.2, the base offense level may be increased from 17 to as high as 35, also depending on the amount laundered. The amount of money involved thus plays an important role in determining the offense level. Moreover, Percan's money laundering scheme was clearly "ongoing or continuous." Because the money laundering counts could therefore have been grouped under Subsection (d),[3] the district court's decision to group them under Subsection (b) was in my view harmless.[4]
 
 
 35
 Accordingly, I concur in the result.
 
 
 
 NOTES:
 
 
 [1]
 Six of the laundering counts in this case alleged violations of 18 U.S.C. § 1957. Section 1957 does not have a specific requirement that the laundering be of the "promotion" variety. However, since it is clear that all of Percan's laundering activities were designed to promote further crimes, my analysis regarding the designation of the victims of his laundering is the same with respect to all of the laundering counts.
 
 
 [2]
 The indictment in the present matter makes no attempt at identifying the victims of airbag thefts "promoted" by the money laundering.
 
 
 [3]
 A recent decision, see United States v. Petrillo, 237 F.3d 119, 125 (2d Cir. 2000), includes dicta stating that "application of subsection (d) to money laundering is prima facie inappropriate." However, that dicta occurred in the context of a discussion of our conclusion in United States v. Napoli that counts of money laundering and fraud should not be grouped under (d). Napoli held that money laundering and fraud were not offenses of the "same general type," United States v. Napoli, 179 F.3d 1, 10 (2d Cir. 1999) (quoting U.S.S.G. § 3D1.2, cmt. n. 6), and therefore could not be grouped under (d). In particular, Napoli concluded that the offenses were different because the guidelines governing fraud measure the amount of harm primarily based on the monetary loss, whereas the guidelines governing money laundering set a much higher initial base offense level, so that less of the total offense level for laundering is based on the specific amount of money involved. See id. at 13 ("Because the guidelines for fraud and money laundering measure different types of harms and measure them in different ways . . . [the] fraud and money laundering counts are not of the `same general type' and should not be grouped together under subsection (d)."); see also id. at 10- 12; cf. United States v. Fitzgerald, 232 F.3d 315, 319 (2d Cir. 2000) (interpreting Napoli and holding that tax evasion, fraud, and conversion counts should be grouped under (d) since all "measure the harm by reference to the amount of monetary loss"). Napoli further emphasized Commentary language stating that grouping is appropriate where "the offense guidelines . . . base the offense level primarily on the amount of money or quantity of substance involved," U.S.S.G. ch. 3, pt. D, introductory cmt.; see Napoli, 179 F.3d at 10, and concluded that the money laundering guideline does not meet this criterion, see id. at 10- 11.
 However, Napoli's interpretation of Subsection (d) is not relevant to the issue I am raising, namely, whether the multiple money laundering counts themselves should have been grouped under (d). Clearly, multiple counts concerning the same basic offensive conduct are offenses of the "same general type." Moreover, as noted, money laundering is specifically listed as an offense appropriate for grouping under Subsection (d). While being listed under (d) may not be dispositive, see Napoli, 179 F.3d at 9 n.4 (holding listing under (d) "insufficient" to establish that counts should be grouped), it certainly has weight. Further, the text of Subsection (d) requires only that the "offense level is determined largely on the basis of the total harm or loss." U.S.S.G. § 3D1.2(d). Under the guidelines covering the kind of laundering alleged here, the base offense level may be increased by more than 50 percent, depending on the amount laundered. See id. §§ 2S1.1, 2S1.2; see, e.g., United States v. O'Kane, 155 F.3d 969, 974 (8th Cir. 1998) ("[I]t is clear that several separate money laundering counts could properly be grouped together under (d) . . . ."). The dicta in Petrillo says no more than that it may be "prima facie inappropriate" to group money laundering counts with fraud counts, not that it is presumptively inappropriate to group multiple money laundering counts themselves.
 
 
 [4]
 It does not appear that the offense level in this case would have changed had the fifteen money laundering counts been grouped under (d) rather than (b). When grouping under (b), courts are instructed to take as the offense level that of the "most serious of the counts comprising the Group." U.S.S.G. § 3D1.3(a). In Percan's case, the first money laundering count (count three of the indictment) alleged the most harm, claiming that the defendants used between one and two million dollars in illegal proceeds to further the stolen- goods scheme. The Guidelines section that covers money laundering provides for a base offense level of 23 for promotion money- laundering and for an increase in the offense level depending on the amount laundered. See id. § 2S1.1. Under that Section, the base offense level is increased by 5 where the amount laundered is between one and two million dollars. See id. § 2S1.1(b)(2). Thus, the Probation Office determined that the money laundering counts, grouped under Subsection 3D1.2(b), had a total offense level of 28. Had the counts instead been grouped under Subsection 3D1.2(d), "the offense level applicable to a Group is the offense level corresponding to the aggregated quantity." Id. § 3D1.3(b). "When the counts involve offenses of the same general type to which different guidelines apply . . . , apply the offense guideline that produces the highest offense level." Id. In Percan's case, the total amount allegedly laundered was between one and two million dollars, resulting in the same total offense level of 28 under Section 2S1.1, the "guideline that produces the highest offense level" in this case. Thus, because using the aggregated quantity results in the same total offense level in this case as does using the most serious count, grouping the money laundering counts under Subsection (b), while erroneous, does not affect the outcome.