**UNITED STATES OF AMERICA,**
Appellee–Cross–Appellant,

v.

**Harry SHUSTER, Defendant–**
**Appellant–Cross–**
**Appellee.**

**Nos. 02–1417L, 02–1487XAP.**

United States Court of Appeals,
Second Circuit.

June 10, 2003.

646

Jeremy Maltby, O'Melveny & Myers, LLP, New York, N.Y., for Appellant.

Ronald G. White, Asst. U.S. Atty., Brooklyn, N.Y., for Appellee.

Present: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

### SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.

Harry Shuster appeals from the July 12, 2002, judgment of the District Court for the Eastern District of New York (John Gleeson, District Judge) sentencing him principally to 72 months' imprisonment following his conviction for securities fraud and money-laundering offenses. The Government has cross-appealed to challenge one aspect of the sentence. On the cross-appeal, we have affirmed in an opinion filed this date. This summary order concerns Shuster's contentions on his appeal, all of which are rejected.

1. The District Court did not abuse its discretion under Fed.R.Evid. 403 in prohibiting Shuster's cross-examination of Jordan Belfort, the cooperating witness, concerning the audiotaped statements Belfort made to Dennis Gaito. The Court noted that the circumstances under which the tapes were made—"the result of a deliberate deception at the government's instance of Gaito by Belfort"—were such that the conversation was full of lies by Belfort and thus would be likely to confuse and mislead the jury. Moreover, Shuster had ample opportunity to call Belfort's credibility into question using other evidence.

2. The District Court did not err in denying Shuster's motion to take the deposition of Montague Koppel or in rejecting his claim that the Government improperly failed to assist him in obtaining Koppel's live testimony at trial. Koppel, a close friend and business associate of Shuster's who lived in the United Kingdom, would allegedly have provided testimony undermining the Government's allegations that Shuster violated SEC provisions by using the corporation Plus One as a nominee when investing in South Africa. Judge Gleeson refused to conclude that Koppel was "unavailable" for the purposes of Fed. R.Crim.P. 15, citing Koppel's vacillation on

the issue of whether he would travel to the United States to testify, his close relationship with Shuster, and his efforts to prevent the Government from obtaining documents "necessary to a meaningful cross-examination of him."

3. The District Court did not exceed its discretion in determining that Koppel's statements in the depositions of Stephen Screech and Walton Imrie did not qualify as statements against interest under Fed.R.Evid. 804(b)(3). Even if these statements might qualify as statements against penal interest, Judge Gleeson was entitled to conclude that the statements lacked requisite indications of reliability.

4. The District Court properly exercised its discretion in excluding the affidavits of Shuster's mother and Koppel, both of which suggested that Shuster had merely managed Plus One funds on behalf of his parents. In rejecting Mrs. Shuster's affidavit, the Court noted a double hearsay problem in that her knowledge was based on statements made to her by others. The Court also correctly rejected the claim that Shuster's and Koppel's affidavits qualified under Fed.R.Evid. 804(b)(3) as statements against penal interest in light of the lack of "corroborating circumstances indicating the trustworthiness of these statements."

5. The Court did not exceed its discretion in admitting evidence of Shuster's prior bad acts with respect to the film transactions ("LHO") fraud. The LHO fraud evidence involved uncharged acts suggesting that Shuster had tricked LHO into providing money for a film production by claiming that financing was also being provided by a Swiss investor, when in fact Shuster had arranged with Imrie for Sonnenberg Anstalt, N.V., to act as Shuster's nominee and pose as the Swiss investor. This transaction was similar to the charged acts in which Shuster had used Plus One as his nominee to conduct illegal securities transactions. The similar acts evidence was probative of knowledge and intent, which Shuster had placed in issue.

■ 6. The District Court did not err in calculating the "value" of the laundered funds under U.S.S.G. § 2S1.1 (1997). Shuster claims that the Court should have considered "only the illicit profits generated from [the fraudulent securities] transactions, and not untainted capital initially invested." Neither the plain language of the Guidelines provision nor its commentary supports this interpretation. Rather than being synonymous with the word "profits," as Shuster seems to contend, "proceeds"—the term used in subsection 18 U.S.C. § 1956(a)(1)—means "the sum derived from a sale or other transaction," *The American College Dictionary,* 965 (Random House 1970), and thus clearly includes both the illegitimate funds and the legitimate money used to disguise them, *see United States v. Martin,* 320 F.3d 1223, 1225–27 (11th Cir.2003). The Court also properly included various securities transactions as relevant conduct and did not engage in impermissible double counting.

■ 7. The District Court properly applied a two-level enhancement under U.S.S.G. § 2F1.1(b)(3)(B) (1997) because the offense involved a violation of an administrative order. Shuster contends that the enhancement applies only if the order was entered against the defendant himself. This argument overlooks the general guideline provision that "specific offense characteristics ... shall be determined on the basis of ... all acts ... aided, abetted, [or] counseled ... by the defendant." *Id.* § 1B1.3(a)(1)(A). The order in question named Jordan Belfort, and the District Judge found that Belfort "along with others, including Shuster, decided to defy [the administrative order] and to commit very lucrative securities fraud notwithstanding

it. They had to engage in some contortions in order to do that." The commentary to section 2F1.1(b)(3)(B), in describing the subsection's application to an order naming the defendant or an entity controlled by him, *see id.* § 2F1.1(b)(3)(B), comment. (n.5), could arguably be understood to limit the unrestricted wording of the enhancement provision. On the other hand, the commentary could also be read to broaden the enhancement provision: it could mean that when a company controlled by a defendant violates an administrative order entered against the company, the defendant is subject to the enhancement simply because he is aware of the order, even if he lacks the *mens rea* necessary for aider and abettor responsibility. In view of the ambiguity of the commentary, we decline to read it to alter the unrestricted scope of the enhancement provision itself, which refers to the "offense," and not to the "defendant," or to preclude application of section 1B1.3(a)(1)(A) making Shuster liable for conduct covered by section 2F1.1(b)(3)(B) that Shuster aided.

8. The District Court properly declined to group the securities offenses with the money-laundering offenses pursuant to the 1997 version of U.S.S.G. § 3D1.2. *Cf United States v. Szur,* 289 F.3d 200, 214–16 (2d Cir.2002); *United States v. Sabbeth,* 277 F.3d 94, 96–99 (2d Cir.2002); *United States v. McCarthy,* 271 F.3d 387, 400–401 (2d Cir.2001); *United States v. Sabbeth,* 262 F.3d 207, 220–21 (2d Cir.2001), *reh'g denied,* 277 F.3d 94 (2d Cir.2002); *United States v. Kalust,* 249 F.3d 106, 108–10 (2d Cir.2001).

The Appellant's remaining contentions have been considered and rejected as lacking merit.