**UNITED STATES of America,
Appellee,**

v.

**Donovan SCOTT, Defendant–Appellant.**

No. 02–1627.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 11, 2003.

Decided: Oct. 21, 2004.

Jeffrey A. Meyer, Assistant U.S. Attorney, New Haven, CT (Kevin J. O'Connor, U.S. Attorney, Deborah R. Slater, Assistant U.S. Attorney, and Adam I. Muchmore, law student intern, on the brief), for Appellee.

Thomas G. Dennis, Federal Public Defender, Hartford, CT, for Appellant.

Before: JACOBS, LEVAL, and POOLER, Circuit Judges.

LEVAL, Circuit Judge.

Defendant-appellant Donovan Scott appeals from a judgment of the United States District Court for the District of Connecticut (Ellen Bree Burns, *J.*,) convicting him, pursuant to his guilty plea, of being found unlawfully in the United States after having previously been deported, in violation of 8 U.S.C. § 1326(a), and sentencing him to a term of imprisonment of 70 months. In this appeal, Scott contends that the district court erred in adding Criminal History points pursuant to Section 4A1.1(d) of the United States Sentencing Guidelines ("U.S.S.G.") and claims that the district court improperly declined to grant a downward departure. We affirm the judgment of the district court, finding that, on the facts of this case, the district court properly increased Scott's Criminal History Category under § 4A1.1(d). As for the court's refusal to depart downward, we find no reason to believe that the court misunderstood its authority; to the extent the appeal challenges the court's exercise of discretion in declining to depart, we are without jurisdiction to consider it. *See* 18 U.S.C. § 3742

## BACKGROUND

Scott is a native of Jamaica, who moved to the United States in 1985. He accumu-

lated five criminal convictions in the United States prior to this one. In 1990, Scott was convicted by a Connecticut state court of possession of a pistol without a permit and was sentenced to one year of imprisonment. Later the same year, he was convicted in a California state court of conspiracy to possess cocaine for sale and was sentenced to a two-year term of imprisonment. In 1992, Scott was convicted by a New York state court of second-degree obstruction of a governmental official and sentenced to 90 days imprisonment In 1995, he was convicted by a New York state court of attempted sale of a controlled substance (cocaine) in the third-degree, for which he was sentenced to a suspended term of one to three years imprisonment and released on a two-year term of parole.

In light of this criminal history, the Immigration and Naturalization Service ("INS") initiated deportation proceedings. Scott was deported to Jamaica on October 28, 1996. Approximately two months after his deportation, however, he illegally re-entered the United States, where he remained until the present proceeding.

In 2001, after his reentry, Scott was convicted in Connecticut state court of one count of possession of narcotics and one count of reckless endangerment of minor children; he was sentenced on November 21, 2001 to concurrent suspended terms of one and three years imprisonment, placed on probation for two years, and released. Approximately a month later, on or about December 17, 2001, the INS learned of Scott's presence in the United States. The INS located the defendant on or about February 28, 2002 in Bridgeport, Connecticut.

Scott was then indicted on the present charge—being found in the United States on February 28, 2002 after having been deported, in violation of 8 U.S.C.

§ 1326(a). Scott entered a plea of guilty. At sentencing, the parties disputed the calculation of Scott's Criminal History score—in particular whether two Criminal History points should be added pursuant to U.S.S.G. § 4A1.1(d) for Scott's commission of the offense while on probation. The defendant argued that the adjustment should not apply and that, if it did apply, the court should grant an offsetting downward departure. The district court did add two Criminal History points under U.S.S.G. § 4A1.1(d). It implicitly declined Scott's application for downward departure, by imposing sentence without making reference to it.

## DISCUSSION

### I. Enhancement under § 4A1.1(d)

Scott's first argument on appeal is that, in a prosecution pursuant to 8 U.S.C. § 1326(a) for the re-entry of a removed alien, the two-point Criminal History enhancement of U.S.S.G. § 4A1.1(d) should not be applied to a defendant who was "found" to be illegally in the United States while serving the prior criminal sentence. U.S.S.G. § 4A1.1(d) prescribes an increase of two points to the defendant's Criminal History score "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Because his challenge is to the district court's legal interpretation of a sentencing guideline, our review is *de novo*. *United States v. Simpson*, 319 F.3d 81, 85 (2d Cir.2002).

Scott's contention is that the enhancement of sentence imposed by U.S.S.G. § 4A1.1(d) should apply only where the defendant committed some new criminal act while under a prior criminal justice sentence and not where his new conviction

merely results from the new detection by law enforcement of his previously existing criminal status. He contends that his own criminal activity represented by the current offense (his illegal reentry after departure) occurred *prior to* the Connecticut conviction, notwithstanding that he was not *found* until he was "under [the Connecticut] criminal justice sentence." U.S.S.G. § 4A1.1(d). For this reason, he contends that the sentence enhancement of § 4A1.1(d) should not apply. He argues that precisely because he was under a criminal sentence, he could not leave the United States and thus avoid committing the subsequent offense of being found illegally in the United States. In such circumstances, he contends, the defendant has no opportunity while under a criminal sentence to avoid committing the subsequent offense of being found illegally in the United States.

The government contends that even if the defendant is powerless while under a criminal sentence to avoid the occurrence of the second offense, he had the power to avoid the predicament either by not illegally reentering the United States, or by departing prior to committing the prior offense. Other circuits that have considered this issue have concluded that an alien who is found in the United States while serving a separate criminal justice sentence should receive a two-point increase under § 4A1.1(d). *See United States v. Rosales–Garay,* 283 F.3d 1200, 1202–03 (10th Cir.), *cert. denied,* 536 U.S. 934, 122 S.Ct. 2612, 153 L.Ed.2d 797 (2002); *United States v. Coeur,* 196 F.3d 1344, 1345–46 (11th Cir.1999); *United States v. Cuevas,* 75 F.3d 778, 784 (1st Cir.1996); *United States v. Santana–Castellano,* 74 F.3d 593, 598 (5th Cir.), *cert denied,* 517 U.S. 1228, 116 S.Ct. 1865, 134 L.Ed.2d 963 (1996).

Whatever answer we might give if the defendant were truly without ability to avoid the commission of the subsequent immigration offense once under the prior criminal justice sentence, these are not the facts of Scott's case. In this case, Scott did not lack ability to control being found in the United States after imposition of his Connecticut sentence. The sentence of the Connecticut court placed Scott on probation at the end of November, 2001. He was not found by the INS until February 28, 2002, three months later. During that three month period, Scott had ample opportunity to leave the United States, so as to avoid being found illegally in this country.

At oral argument, Scott's counsel argued that departure from the United States might have violated the terms of his Connecticut probation. Assuming that Scott's conditions of probation required that he remain within the State of Connecticut, we find this argument unpersuasive. Such a restriction is not immutable. Scott could have applied to the Connecticut court to allow him to depart from the United States. Had the application been granted, he might, without violating the Connecticut court's orders, have avoided being found in the United States while under the Connecticut sentence. He made no such application.

We recognize that Scott might have been disinclined to make such a request because doing so might have increased the likelihood of his being found by the INS, convicted for violating § 1326(a), and deported. Nonetheless, although the choice may have been difficult, it was Scott's choice not to seek permission to leave the United States. We therefore find that Scott's legal argument has no application to his case. His is not a case of inability to terminate his illegal presence in the Unit-

ed States while under a prior criminal sentence.

We conclude that the district court properly added two points to Scott's sentence under U.S.S.G. § 4A1.1(d).

## II. Downward Departure

 Scott contends his sentence should be vacated and remanded for reconsideration on the ground that the court did not understand its authority to depart downward. A district court's decision to deny a defendant's application for downward departure from the Guidelines range is within the court's broad discretion and rarely reviewed on appeal. *See United States v. Silleg,* 311 F.3d 557, 561 (2d Cir.2002). There are exceptions "where the defendant shows that a violation of law occurred, that the Guidelines were misapplied, or that the refusal to depart was based on the sentencing court's mistaken conclusion that it lacked the authority to depart." *United States v. Kalust,* 249 F.3d 106, 110 (2d Cir.2001) (quotation omitted).

Defense counsel raised Scott's request for a departure at the beginning of the sentencing hearing, and the government responded. The court imposed a sentence that did not include a downward departure without speaking on the question. Scott contends the court's silence on the issue supports the inference that the court failed to understand its authority to depart.

 A district court is not obliged to give reasons for refusing to depart. *See United States v. Lawal,* 17 F.3d 560, 563 (2d Cir.1994) ("no statement of reasons is required if the district court refuses to downwardly depart at all"). Furthermore, in order to prevail in showing that the sentencing judge's denial of departure was based on a "mistaken conclusion that it lacked the authority to depart," *see Kalust,* 249 F.3d at 110, a defendant must point to

"clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority." *United States v. Gonzalez,* 281 F.3d 38, 42 (2d Cir.2002) (quotation omitted). A district court's silence concerning its refusal to depart downward, generally, does not support an inference that the district court misapprehended its scope of authority. *See United States v. Moore,* 54 F.3d 92, 102 (2d Cir. 1995). We have no reason to doubt that the court understood its legal authority.

## CONCLUSION

The judgment of the district court is AFFIRMED.

The mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker,* — U.S. —, 125 S.Ct. 11, 159 L.Ed.2d 838, 2004 WL 1713654 (U.S. cert. granted Aug. 2, 2004) (mem.), and *United States v. Fanfan,* — U.S. —, 125 S.Ct. 12, 159 L.Ed.2d 838, 2004 WL 1713655 (U.S. cert. granted Aug. 2, 2004) (mem.). Should any party believe there is a special need for the District Court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*