14-2383-cr
*United States v. Liddon Young*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2015
No. 14-2383-cr

UNITED STATES OF AMERICA,
*Appellee,*


*v.*


LIDDON YOUNG,
*Defendant-Appellant.*


————

Appeal from the United States District Court
for the Western District of New York

————

SUBMITTED: DECEMBER 7, 2015
DECIDED: JANUARY 29, 2016

————

Before: CABRANES, PARKER, and LOHIER, *Circuit Judges*.

————

On appeal from a July 1, 2014 judgment of the United States
District Court for the Western District of New York (Frank P. Geraci,

Jr., *Judge*) sentencing defendant-appellant Liddon Young principally to a term of imprisonment of fifteen years. We **AFFIRM** the sentence insofar as it rests on the District Court's rejection of Young's arguments for a downward departure and a variance, but insofar as the sentence rests on the District Court's application of sentencing enhancements under U.S.S.G. § 2K2.1(b)(6)(B) and U.S.S.G. § 3C1.1 and its denial of a sentencing adjustment under U.S.S.G. § 3E1.1, we **REMAND** for resentencing consistent with this opinion.

Judge LOHIER concurs in part and concurs in the judgment in part in a separate opinion.

————

> David C. Pilato, LaDuca Law Firm, Rochester, NY, *for Defendant-Appellant*.
>
> Stephan J. Baczynski and Joseph J. Karaszewski, Assistant United States Attorneys, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee.*

————

JOSÉ A. CABRANES, *Circuit Judge*:

The principal question presented is whether, in the circumstances of this case, the imposition of sentencing enhancements under both U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(B) based on the same underlying conduct—transferring firearms with reason to believe they would be used in

2

felony offenses—constituted "double-counting" clearly prohibited by the United States Sentencing Commission (the "Sentencing Commission").

Defendant-appellant Liddon Young contends that imposing both sentencing enhancements did constitute such prohibited double-counting, and on that basis appeals a July 1, 2014 judgment of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *Judge*) sentencing him principally to a term of imprisonment of fifteen years. Young further argues that the District Court erred by applying a sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1, refusing to apply an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, failing to consider his arguments in support of a downward departure and a variance, and imposing a substantively unreasonable sentence.

We find no error in the District Court's decision not to expressly discuss and reject Young's arguments for a downward departure and a variance. We conclude, however, that the District Court's application of the sentencing adjustments was in error. Specifically, on the facts presented here, the District Court's imposition of a sentencing enhancement under § 2K2.1(b)(6)(B) constituted "double-counting" clearly prohibited by the Sentencing Commission, and its rulings on adjustments under § 3C1.1 and § 3E1.1 were not supported by the requisite factual findings. Thus, without reaching Young's substantive-unreasonableness argument, we **AFFIRM** his sentence insofar as it rests on the District Court's

3

rejection of his arguments for a downward departure and a variance; insofar as the sentence rests on the District Court's application of sentencing enhancements under U.S.S.G. § 2K2.1(b)(6)(B) and U.S.S.G. § 3C1.1 and its denial of an adjustment under U.S.S.G. § 3E1.1, we **REMAND** for resentencing consistent with this opinion.

## BACKGROUND

On May 14, 2013, Young was indicted for his role in a scheme that involved the unlawful distribution of firearms. Without the benefit of a plea agreement, he entered a plea of guilty to three firearms violations.[1]

Prior to sentencing, a probation officer interviewed Young to assist in preparing a presentence report. In discussing his offense conduct, Young told the probation officer that he never sold guns to known drug dealers and had no reason to think that the guns he distributed would be used in connection with felony offenses. He also told the probation officer that he never dealt in firearms before meeting an individual named Paul Davis in 2012. The probation officer concluded that Young was likely being untruthful on both points.

---

[1] Specifically, Conspiracy to Engage in the Business of Dealing Firearms without a License (18 U.S.C. § 371); Unlawful Dealing in Firearms (18 U.S.C. §§ 922(a)(1)(A) & 924(a)(1)(D)); and Selling Firearms to a Person Knowing or Having Reasonable Cause to Believe that Such Person Is a Felon (18 U.S.C. §§ 922(d)(1) & 924(a)(2)).

The District Court held a hearing to determine whether Young had lied to the probation officer about his conduct. At the hearing, Davis testified that he met Young in 2012, at which time Young was already engaged in the illegal sale of firearms. According to Davis, he and Young developed a business relationship. The two would meet in Atlanta, where Young would sell guns to Davis, eight to ten at a time. Davis would bring the guns to Rochester to sell them. Davis made up to four such trips. Between Davis's trips and direct sales to other customers, Young sent between twenty-five and fifty guns—including AK-47s, MAC-10s, and TEC-9s—to Rochester.

According to Davis, he and Young discussed their customers early in their relationship. When Davis made his first trip northward, Young inquired about who might purchase the guns in Rochester. Davis told Young he planned to sell to two "cocaine and marijuana dealers." Young told Davis to be careful.

Young also spoke with Davis about Young's preexisting customers. He disclosed that he was selling firearms to his cousin, a Rochester cocaine dealer named "Reggie" or "Reginald." At one point, Young gave Davis three firearms to deliver to this cousin.

An individual named Reggie Bullock—the drug-dealing cousin "Reggie" known to Davis—also testified. He told the Court, contrary to Davis's testimony, that Young had never provided him with a gun. But he also testified that he was a cocaine dealer and that he had once seen Young sell three guns, including a TEC-9, to a person Young knew to be Bullock's primary source of drugs. Young

5

also took the stand, testifying that he never sold to anyone he knew to be a drug dealer and had not engaged in trafficking prior to meeting Davis.

Following the hearing, Judge Geraci articulated factual findings on the record. He recognized that all three witnesses had reason to fabricate testimony. But he credited Davis's statement that Young had provided him with guns to deliver to Young's cousin Reggie, a drug dealer. He also credited Davis's testimony that Young had been engaged in firearms dealing before the two met. Judge Geraci declined to credit Young's testimony that he did not know Reggie Bullock to be in the drug business. Based on the testimony described above and his credibility determinations, Judge Geraci concluded that Young had had reason to believe that the weapons he transferred would be used or possessed in connection with other felony offenses. He also concluded that Young had lied to the probation officer who prepared the presentence report "regarding his knowledge, intent or reason to believe that the weapons he sold would be used in connection with another felony offense" and in telling the officer that he had not illegally sold firearms prior to meeting Davis. Judge Geraci accordingly imposed sentencing enhancements under U.S.S.G. §§ 2K2.1(b)(6)(B) (for transferring a firearm with reason to believe it would be used in connection with another felony)[2] and 3C1.1 (for obstruction of

[2] U.S.S.G. § 2K2.1(b)(6)(B) provides: "If the defendant—(B) used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent,

6

justice).[3]  He also ruled that, in light of his application of the obstruction enhancement, an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 was unavailable.

These rulings, combined with Young's base offense level of 22, two enhancements Young does not challenge on appeal,[4] and a criminal history category of III, initially yielded a United States Sentencing Guidelines ("Guidelines") calculation of 292–365 months. The bottom of this range, however, exceeded the 20-year statutory maximum; thus, Young's Guidelines sentence was 20 years. *See United States v. Dorvee*, 616 F.3d 174, 180-81 (2d Cir. 2010).

Prior to sentencing, Young requested that the District Court (1) depart downward because his criminal-history category significantly overrepresented the seriousness of his criminal past, and (2) vary from the Guidelines range based on such factors as his

---

or reason to believe that it would be used or possessed in connection with another felony offense, increase [the offense level] by 4 levels."  U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sentencing Comm'n 2013) ("2013 U.S.S.G.").

[3] U.S.S.G. § 3C1.1 provides: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels."  2013 U.S.S.G. § 3C1.1.

[4] These enhancements were imposed under U.S.S.G. §§ 2K2.1(b)(1)(C) (offense involving between 25 and 99 firearms) and 2K2.1(b)(5) (trafficking of firearms).

difficult upbringing, his close relationship with his family, and the need to avoid unwarranted disparities in sentencing.[5] The Court did

_____

[5] Title 18, United States Code, Section 3553 provides:

**(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant; and
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for—
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>> **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

not explicitly address the arguments made in connection with these requests and sentenced Young principally to a term of fifteen years' imprisonment.

On appeal, Young argues that the District Court erred by (1) imposing a sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) (the "other-felony-offense enhancement"); (2) imposing a sentencing

> **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
> **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>
> **(5)** any pertinent policy statement—
> **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

enhancement under U.S.S.G. § 3C1.1 (the "obstruction enhancement"); (3) declining to apply a sentencing adjustment under U.S.S.G. § 3E1.1 (the "acceptance-of-responsibility adjustment"); (4) failing to explicitly address Young's arguments in support of a downward departure and a downward variance; and (5) imposing a substantively unreasonable sentence.

There was no error in the District Court's decision not to expressly discuss and reject Young's arguments for a downward departure and a variance. Nothing in the record suggests that Judge Geraci misunderstood his authority to depart downward, and in imposing the sentence he plainly considered the relevant factors under 18 U.S.C. § 3553(a). We conclude, however, that the District Court erred in imposing the other-felony-offense and obstruction enhancements and in declining to apply the acceptance-of-responsibility adjustment. On this basis we vacate and remand for resentencing. In light of this disposition, we need not and do not reach Young's argument that his sentence is substantively unreasonable.

## DISCUSSION

We review sentences "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "We must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a

sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Tutty*, 612 F.3d 128, 130–31 (2d Cir. 2010) (internal quotation marks omitted). "Although a district court . . . is not required to impose the now-advisory Guidelines-recommended sentence, the court is nonetheless normally required to calculate the sentencing range that the Guidelines recommend." *United States v. Carr*, 557 F.3d 93, 103 (2d Cir. 2009).

We also review sentences for substantive reasonableness, "reversing only when the trial court's sentence cannot be located within the range of permissible decisions." *Tutty*, 612 F.3d at 131 (internal quotation marks omitted). "In reviewing the substantive reasonableness of a sentence, we take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (internal quotation marks omitted). We "do not presume that a Guidelines sentence is necessarily substantively reasonable." *United States v. Messina*, 806 F.3d 55, 66 (2d Cir. 2015).

If a sentence is tainted with procedural error, "we may remand to the district court for resentencing without proceeding to a substantive review of the original sentence, or, where circumstances warrant, we may review for both procedural error and substantive unreasonableness in the course of the same appeal." *Tutty*, 612 F.3d at 131 (internal citations omitted).

11

## I. Requests for Downward Departure & Variance

Young requested that the District Court depart downward because his criminal-history category overrepresented the seriousness of his criminal past, *see* 2013 U.S.S.G. § 4A1.3(b)(1), and that the Court vary from the Guidelines range based on a number of factors relevant under § 3553(a). He contends that the District Court erred by not formally ruling on his requests and failing to discuss his arguments during sentencing. We disagree.

A district court's decision not to depart downward is "within the court's broad discretion and rarely reviewed on appeal." *United States v. Scott*, 387 F.3d 139, 143 (2d Cir. 2004). "A district court is not obliged to give reasons for refusing to depart," and, where a defendant has not shown a violation of law or misapplication of the Guidelines, refusal to depart warrants vacatur only if the defendant "point[s] to clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority." *Id.* (internal quotation marks omitted). "A district court's silence concerning its refusal to depart downward, generally, does not support an inference that the district court misapprehended its scope of authority." *Id.* In this case, Young offers no reason why we should suppose that the District Court misunderstood its authority to depart, and we do not think it did. The Court was merely silent on the point.

Nor need a district judge imposing a sentence recite every § 3553(a) argument advanced by a defendant. Rather, we presume

that the judge properly considered the sentencing factors even in the absence of protracted discussion pertaining to each of the factors and all of the defendant's contentions. *United States v. Brown*, 514 F.3d 256, 264 (2d Cir. 2008); *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007). Here, Young identifies nothing in the record suggesting that Judge Geraci failed to consider the § 3553(a) factors or his arguments in support of a variance, and indeed the record shows that Judge Geraci appropriately discharged his obligations under § 3553(a). *See, e.g.*, App. 374 (discussing the factors enumerated in § 3553(a)). We accordingly reject this argument.

## II.   U.S.S.G. § 2K2.1(b)(6)(B) (Other Felony Offense Enhancement)

Section 2K2.1(b)(6)(B) provides for a four-point enhancement if the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." 2013 U.S.S.G. § 2K2.1(b)(6)(B). Young challenges the application of this enhancement on three separate grounds. He argues, first, that the District Court clearly erred in crediting Davis's testimony that Young gave him a gun to deliver to Young's cousin, a drug dealer named Reggie; second, that even if that testimony were credited, the evidence adduced at the hearing did not support a reasonable inference that Young had reason to believe the firearms he distributed would be used in connection with

13

other felonies; and third, that applying the enhancement constituted impermissible "double-counting."

Young's first argument is easily dispatched. The District Court's decision to credit Davis's testimony, even in the face of contrary testimony from Bullock, is "entitled to substantial deference." *United States v. Norman*, 776 F.3d 67, 78 (2d Cir. 2015). It was reasonable not to believe the testimony from Bullock, who had cause to lie about having received guns from Young. Indeed, Young himself suggests elsewhere in his brief that Bullock's testimony was not credible. We have no reason to disturb the District Court's credibility determination.[6]

Young's second argument is no more convincing than his first. The District Court specifically found that Young unlawfully sold a large number of unusually dangerous weapons—AK-47s and TEC-9s—to people he knew to be drug dealers. That is sufficient to support an inference that he had reason to believe the guns would be used in connection with other felonies. *See United States v. Martin*, 78 F.3d 808, 811–12 (2d Cir. 1996) (affirming application of enhancement based on defendant's sale of a large number of easily concealable handguns in "unusual circumstances").

---

[6] Young raises the same clear-error argument in connection with his challenges to application of the obstruction enhancement and non-application of the acceptance-of-responsibility adjustment. Because the District Court's rulings concerning those adjustments turned on the same credibility determinations discussed above, we also reject Young's clear-error argument in those contexts.

14

Young's final argument, however, has merit. He contends that applying the other-felony-offense enhancement constituted impermissible "double-counting" because the District Court also applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for "trafficking" in firearms. He is correct.[7]

---

[7] Our concurring colleague suggests that an "obstacle" stands in the way of our reviewing Young's double-counting argument: "Young never advanced this analysis on appeal or before the District Court, and the Government has had no opportunity to rebut it." Concurring Op. 3.

We think that Young has adequately presented his double-counting argument on appeal. *See, e.g.*, Defendant's Br. 32 (arguing that application of both §§ 2K2.1(b)(5) and 2K2.1(b)(6)(B) based on defendant's transfer of "several guns to individuals who he had reason to believe would use them unlawfully . . . . amounts to impermissible double counting"); Defendant's Reply Br. 7 (relying on *United States v. Johns*, 732 F.3d 736 (7th Cir. 2013), in which the Seventh Circuit interpreted Application Note 13(D) to § 2K2.1 to hold that application of both enhancements constituted improper double-counting). We can agree with the concurrence that this argument might have been advanced somewhat more cogently; just the same, we are not at liberty to ignore it.

As for our concurring colleague's observation that Young does not appear to have advanced this analysis below, we do not disagree. We have found nothing in the record indicating that Young argued double-counting before the District Court. The government, for its part, does not say whether he did or did not, because the government does not respond to Young's double-counting argument at all. Accordingly, even if Young did not present this argument below, the government has "waived waiver." *See United States v. Quiroz*, 22 F.3d 489, 491 (2d Cir. 1994) (internal quotation marks omitted).

Of course, this is an imperfect state of affairs: neither party (it appears) argued this issue before the District Court, and only one of them has argued it here. We benefit greatly when, as typically occurs, questions are passed on below and fully aired on appeal. But the government's failure to brief either forfeiture or double-counting, though it makes our task more difficult, does not relieve us of our duty to perform it.

Simple "double-counting"—applying more than one Guidelines enhancement based on the same conduct—is unobjectionable, and indeed commonplace. *United States v. Maloney*, 406 F.3d 149, 152–53 (2d Cir. 2005). But double-counting is impermissible if the Guidelines instruct against it. *Id.*; *see United States v. Morris*, 350 F.3d 32, 37 (2d Cir. 2003) (rejecting double-counting argument because the defendant "offered nothing in the Sentencing Guidelines or relevant statutes reflecting an intent to preclude the double counting the District Court employed").

We conclude that the relevant Guidelines provisions and Application Notes indicate that the Sentencing Commission intended to preclude application of the other-felony-offense enhancement in the circumstances of this case. When a defendant receives a sentencing enhancement for "trafficking" in firearms under § 2K2.1(b)(5), Application Note 13(D) to § 2K2.1 prohibits imposition of an enhancement under § 2K2.1(b)(6)(B) based on the defendant's transfer of a firearm with reason to believe it will be used in another felony offense.

We begin with the text of § 2K2.1(b)(6)(B). The other-felony-offense enhancement applies if a defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." 2013 U.S.S.G. § 2K2.1(b)(6)(B). The provision thus consists of two clauses, each of which describes a different set of circumstances. The first clause—

16

the in-connection-with clause—concerns defendants who use or possess firearms in connection with another felony offense. The second—the reason-to-believe clause—concerns defendants who possess firearms, or transfer them to others, with knowledge, intent, or reason to believe that they will be used or possessed in connection with another felony offense. The District Court concluded that this second clause applied to Young's conduct: it found that he had knowledge, intent, and reason to believe that the weapons he transferred would be used in connection with other felonies (i.e., drug trafficking).

Young also received a four-level enhancement under U.S.S.G. § 2K2.1(b)(5), which applies if "the defendant engaged in the trafficking of firearms." 2013 U.S.S.G. § 2K2.1(b)(5). Application Note 13(A) to § 2K2.1 describes what is meant by "trafficking of firearms," explaining that the enhancement applies if a defendant:

(i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
(I) whose possession or receipt of the firearm would be unlawful; or
(II) who intended to use or dispose of the firearm unlawfully.

17

Application Note 13(D) describes the interaction of the "trafficking" enhancement with the other-felony-offense enhancement. It states that if the "trafficking" enhancement applies, the other-felony-offense enhancement also applies "[i]f the defendant used or transferred one of such firearms *in connection with another felony offense* (i.e., an offense other than a firearms possession or trafficking offense)." 2013 U.S.S.G. § 2K2.1, Application Note 13(D) (emphasis supplied).

These provisions, read together, preclude application of the other-felony-offense enhancement to Young. The District Court found that Young had knowledge, intent, and reason to believe that the guns he transferred would be used in connection with other felonies. In the normal run of things, that is a valid reason to apply the other-felony-offense enhancement. But when the "trafficking" enhancement also applies, as it does in this case, Application Note 13(D) limits the application of the other-felony-offense enhancement to those situations in which "the defendant used or transferred one of such firearms *in connection with* another felony offense," incorporating language from the in-connection-with clause set forth in § 2K2.1(b)(6)(B) (emphasis supplied). *See* note 2, *ante*. No mention is made of situations—like this one—in which the defendant transferred a firearm not *in connection with* another felony offense, but *with knowledge, intent, or reason to believe* it would *later* be used in connection with another felony offense, which would have incorporated language from the reason-to-believe clause set forth in § 2K2.1(b)(6)(B).

18

The omission of such an application compels the conclusion that the application of the other-felony-offense enhancement is limited to the situations specifically addressed in Application Note 13(D). Put another way, by expressly mentioning one application of the enhancement and conspicuously leaving out the other, the Sentencing Commission said clearly—by negative implication, to be sure, but clearly—that when the "trafficking" enhancement applies, a sentence may be enhanced under the in-connection-with clause but not under the reason-to-believe clause. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 & n.12 (2d Cir. 2001) ("To express or include one thing implies the exclusion of the other . . . ." (alteration and internal quotation marks omitted)); *United States v. Ortega*, 94 F.3d 764, 770-71 (2d Cir. 1996) (relying in part on the canon *expressio unius est exclusio alterius* to hold that a Guidelines provision stating that "[p]rior sentences . . . are to be counted in the criminal history score, including uncounseled misdemeanor sentences *where imprisonment was not imposed*" implicitly excluded from the criminal-history computation uncounseled misdemeanor sentences where imprisonment *was* imposed (emphasis in original) (internal quotation marks omitted)). The Application Note's text is, in our view, very much the equivalent of that which the concurrence concedes would prohibit double-counting here: an "express[ ] provi[sion] [stating] that an additional enhancement under § 2K2.1(b)(6) is permissible 'only' when trafficking occurs . . . in connection with a felony." Concurring Op. 4. Accordingly, we conclude that transferring a firearm with knowledge, intent, or reason to believe it will be used in connection with another felony

19

cannot support an enhancement in a case where the "trafficking" enhancement also applies.

As is clear from the analysis above, however, transferring a firearm in connection with another felony offense *can* support a § 2K2.1(b)(6)(B) enhancement in "trafficking" cases. One might argue (particularly in view of the broad definition of "in connection with" set out in Application Note 14(A)) that transferring a firearm with knowledge, intent, or reason to believe it will be used in connection with another felony, without more, can be characterized as transferring a firearm *in connection with* that other felony. But it is not plausible to read § 2K1.1 in that fashion. If the phrase "in connection with another felony offense" in Application Note 13(D) includes the concept of transferring a firearm with knowledge, intent, or reason to believe it will be used in connection with another felony offense, the phrase presumably embraces the same concept where it is used in § 2K2.1(b)(6)(B). *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993) (identical language appearing in two places in the same statute should be given the same meaning in each instance); *United States v. Potes-Castillo*, 638 F.3d 106, 112 (2d Cir. 2011) (ordinary principles of statutory construction apply to Guidelines provisions and their explanatory commentary). But if that is so, the second, reason-to-believe clause in § 2K2.1(b)(6)(B) does no work at all. The Sentencing Commission could have reached the same substantive result by stopping after the first, in-connection-with clause. We accordingly reject this reading of the provision. *See United States v. Aleynikov*, 676 F.3d 71, 81 (2d Cir.

20

2012) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Our construction of § 2K2.1 yields a sensible result in light of the Sentencing Commission's apparent concern (in this particular instance) with double-counting. The "trafficking" enhancement applies in situations (among others) in which a defendant transfers two or more firearms to another person with reason to believe that that person intends to use the firearms unlawfully. 2013 U.S.S.G. § 2K2.1, Application Note 13(A). But for Application Note 13(D), such conduct would also support application of the other-felony-offense enhancement pursuant to the reason-to-believe clause, provided the transferee intended to use the firearms not just unlawfully but in connection with another felony. Thus, Application Note 13(D) avoids the simultaneous application of two provisions likely in many circumstances to punish the same behavior.[8]

---

[8] We acknowledge, as the concurrence emphasizes, that Application Note 13(D) is not perfectly tailored to address all double-counting concerns that might arise through application of the provisions in question. Plainly, the "trafficking" enhancement and § 2K2.1(b)(6)(B)'s reason-to-believe clause are not coextensive in the conduct to which they apply; the latter applies when a person "possesse[s] or transfer[s] any firearm . . . with knowledge, intent, or reason to believe that it [will] be used or possessed in connection with another *felony offense*," 2013 U.S.S.G. § 2K2.1(b)(6)(B) (emphasis supplied), whereas the former can be triggered by transfer of a firearm with reason to believe it will be possessed, used or disposed of merely *unlawfully*. And Application Note 13(D) appears to permit imposition of a "trafficking" enhancement in cases where the defendant also

21

In sum, we conclude that application of the other-felony-offense enhancement to Young constituted impermissible double-counting. Accordingly, the District Court erred in imposing the enhancement, and we must vacate and remand for resentencing.[9]

## III.    U.S.S.G. § 3C1.1 (Obstruction of Justice Enhancement)

Young next argues that the District Court erred in applying an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. We agree.

Section 3C1.1 provides for a two-level enhancement if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the . . . sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related

---

receives an enhancement under U.S.S.G. § 2K2.1(b)(6)(A)—which provides for a four-level increase if the defendant "possesse[s] or transfer[s] any firearm or ammunition with knowledge, intent, or reason to believe that it [will] be transported out of the United States"—even though conduct supporting a § 2K2.1(b)(6)(A) enhancement might often support a "trafficking" enhancement as well. But even if imperfectly tailored, Application Note 13(D) appears reasonably calculated to address a legitimate concern about double-counting and produces a sensible result in furtherance of that end. This buttresses our reading of the Guidelines' text.

[9] Though it is not clear to us that the record would support application of the enhancement on the ground that Young "used or possessed a[ ] firearm . . . in connection with another felony," we do not foreclose the possibility that on remand the District Court could make such a finding.

22

offense." 2013 U.S.S.G. § 3C1.1. Covered conduct includes "providing materially false information to a probation officer in respect to a presentence . . . investigation." 2013 U.S.S.G. § 3C1.1, Application Note 4(H). It is "essential" that a court applying this enhancement make "a finding that the defendant had the specific intent to obstruct justice, i.e., that the defendant consciously acted with the purpose of obstructing justice." *United States v. Brown*, 321 F.3d 347, 351 (2d Cir. 2003) (internal quotation marks omitted). It is not sufficient merely to find that the defendant made materially false statements concerning his offense conduct. *United States v. Bradbury*, 189 F.3d 200, 205 (2d Cir. 1999).

Here, the District Court found that Young made two materially false statements to the probation officer: that he did not know he was selling guns to drug dealers, and that he did not traffic in guns before meeting Davis. On this basis it imposed the enhancement. The government specifically requested that the Court enter a finding that in making those false statements, Young "had the intent to obstruct justice." App. 358. Judge Geraci replied that there was no need to "articulate [Young's] motivation" in speaking falsely—only to find that the statements "were materially false." App. 359. But there *was* such a need: material falsity is not enough to support application of the enhancement. *Bradbury*, 189 F.3d at 205.

The government argues that a finding of specific intent to obstruct justice is not necessary when a "defendant has clearly lied in a statement made under oath." *United States v. Lincecum*, 220 F.3d

23

77, 80 (2d Cir. 2000) (internal quotation marks omitted). When the clearly false statement was made under oath, the court need only "point to the obvious lie and find that the defendant knowingly made a false statement on a material matter." *Id.* (internal quotation marks omitted). But here, the false statements the District Court identified were not made under oath. They were made during an interview with a probation officer. App. 356 ("[T]his Court finds that there's sufficient evidence that the defendant obstructed the administration of justice by providing false statements to the probation officer."). Accordingly, the rule of *Lincecum* does not apply.

We do not mean to imply, of course, that the District Court could not have found on this record that Young specifically intended to obstruct justice, or that the District Court could not have imposed the enhancement based on Young's sworn testimony without making such a finding. But those determinations are for the District Court in the first instance. We leave them for its consideration on remand.

## IV. U.S.S.G. § 3E1.1 (Acceptance of Responsibility Enhancement)

Even without making a finding that Young specifically intended to obstruct justice, the District Court could reasonably have concluded that he was not entitled to an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. But in refusing to apply the adjustment, the Court seems to have relied significantly, perhaps exclusively, on Application Note 4 to § 3E1.1, which reads: "Conduct

24

resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both [provisions] may apply." 2013 U.S.S.G. § 3C1.1, Application Note 4; *see* App. 356 ("Based upon the Court's finding that [Young] provided material[ly] false statement[s] to the probation officer who was conducting the presentence investigation, this is conduct that's inconsistent with the defendant's acceptance of responsibility, and . . . the Court finds that there are no extraordinary circumstances that would justify the defendant receiving a three step reduction . . . .").

Thus, it appears that the District Court, having imposed the obstruction enhancement, declined to adjust downward for acceptance of responsibility because no "extraordinary" circumstances justified the application of both adjustments. In other words, the Court's ruling on the acceptance-of-responsibility adjustment was premised on its ruling on the obstruction enhancement. The latter having been made in error, the former must fall with it, and application of the acceptance-of-responsibility adjustment considered on remand.

## V.     Substantive Unreasonableness

Because we vacate Young's sentence and remand for resentencing on the basis of procedural error, we need not, and do not, consider his substantive-unreasonableness argument. *See Tutty*,

25

612 F.3d at 131 ("Where there is procedural error, we may remand to the district court for resentencing without proceeding to a substantive review of the original sentence . . . .").

## CONCLUSION

In sum, we hold that there was no error in the District Court's decision not to expressly discuss and reject Young's arguments for a downward departure and a variance. But we also hold that the District Court's application of the other-felony-offense enhancement (U.S.S.G. § 2K2.1(b)(6)(B)) constituted impermissible double-counting clearly prohibited by the Guidelines, and that its rulings concerning the obstruction enhancement (U.S.S.G. § 3C1.1) and the acceptance-of-responsibility adjustment (U.S.S.G. § 3E1.1) were not supported by the necessary factual findings. In light of these holdings, we do not reach Young's argument that his sentence was substantively unreasonable. We thus **REMAND** for resentencing consistent with this opinion.

LOHIER, Circuit Judge, concurring:

I agree with the majority's resolution of virtually every issue on appeal, including the challenged enhancement under United States Sentencing Guideline § 3C1.1.  Even the ultimate outcome reached by the majority on the double counting issue under § 2K2.1(b)(5), § 2K2.1(b)(6)(B), and § 2K2.1's Application Note 13(D) is sensible.  But I am not convinced that these provisions unambiguously work in tandem to preclude application of the other-felony-offense enhancement to Liddon Young as impermissible double counting.  Because the provisions, and the intended effect of Application Note 13(D) in particular, are in my view ambiguous, I would invoke the rule of lenity to uphold Young's challenge to the enhancement.  As to that issue, therefore, I concur in the judgment.

I.

We have suggested that double counting is impermissible only when the applicable Guideline or statute reflects an intent to preclude the application of two or more enhancements in a single sentence.  See United States v. Reyes, 557 F.3d 84, 87 (2d Cir. 2009) ("[D]efendant has not pointed to any passage of either the Guidelines or a statute that reflects a legislative intent to preclude the

1

application of both the . . . enhancement and a[n] . . . adjustment in a single sentence."); United States v. Morris, 350 F.3d 32, 37 (2d Cir. 2003) (holding that "[a]s long as the court does not augment a sentence in contravention of the applicable statute or Sentencing Guideline, no forbidden double counting occurs," and concluding that "[d]efendant has offered nothing in the Sentencing Guidelines or relevant statutes reflecting an intent to preclude the double counting the District Court employed, and has therefore not shown any impermissible double counting") (quotation marks omitted); cf. United States v. Vizcarra, 668 F.3d 516, 525-27 (7th Cir. 2012) (summarizing Second Circuit precedent as such); but see United States v. Maloney, 406 F.3d 149, 152 (2d Cir. 2005) (allowing double counting "where that is the result clearly intended by Congress and the Sentencing Commission"). This presumption in favor of double counting rests on the Commission's general endorsement of the cumulative application of multiple adjustments in Application Note 4(A) to Guideline § 1B1.1.

The majority advances a narrow textual analysis of § 2K2.1(b)(5), § 2K2.1(b)(6)(B), and Application Note 13(D) and concludes that the "application of the other-felony-offense enhancement . . . constituted impermissible double-

2

counting clearly prohibited by the Guidelines." As the majority reads Application Note 13(D), if § 2K2.1(b)(5) applies, then the application of § 2K2.1(b)(6)(B) is plainly confined to those cases in which at least one of the firearms was transferred directly "in connection with" another felony offense. Under this view, the enhancement under § 2K2.1(b)(6)(B) does not apply when the trafficker only has "reason to believe" that the firearms would facilitate another felony offense and the tie between the trafficking and the separate felony offense is weaker.

## II.

As an initial matter, Young never advanced this analysis on appeal or before the District Court, and the Government has had no opportunity to rebut it. Setting that obstacle aside, however, there are three reasons to be somewhat skeptical of the majority's analysis.

## A.

First, the language of Application Note 13(D) does not clearly limit the application of § 2K2.1(b)(6)(B). Instead, the note refers exclusively to the "in connection with" language that appears in § 2K2.1(b)(6) when explaining the circumstances in which double counting must (or, as the application note phrases

3

it, "would") occur. Had the application note further expressly provided that an additional enhancement under § 2K2.1(b)(6) is permissible "only" when trafficking occurs more directly in connection with a felony, that language would plainly foreclose, as impermissible double counting, an additional enhancement under the "reason to believe" prong of § 2K2.1(b)(6). But Application Note 13(D) doesn't expressly preclude double counting under the "reason to believe" prong of § 2K2.1(b)(6)(B); it certainly doesn't do so with the clarity that we've come to demand before concluding that the Commission intended to preclude double counting. See, e.g., United States v. Leung, 360 F.3d 62, 68-69 (2d Cir. 2004) (relying on an application note that "makes clear" the Commission's intention with express language indicating that it would "prevent[] 'double counting' of offense behavior" (quoting U.S.S.G. § 3D1.2(c), cmt. n. 5)).

In fact, the immediately preceding sentence in Application Note 13(D) appears to explicitly endorse double counting in a similar context. It instructs sentencing judges to "apply both subsections (b)(1) and (b)(5)" "[i]n a case in which three or more firearms were both possessed and trafficked." Subsection (b)(5) is the trafficking enhancement, while subsection (b)(1) applies "[i]f the offense involved three or more firearms." Following that sentence, it is entirely

4

possible that the Commission intended that both enhancements "also would apply" (assuming their respective criteria are satisfied) in a case in which the transfer of firearms facilitated another nonfirearms felony.

Had the Commission actually intended to preclude double counting in this context through Application Note 13(D), it presumably would have also referred to subsection (b)(6)(A), which applies to a defendant who "transferred" a firearm with "knowledge, intent, or reason to believe" that it would be transported out of the United States, or continued to refer generally to subsection (b)(6), and not amended the note to refer only to subsection (b)(6)(B). The Commission added prong (A) to § 2K2.1(b)(6) in order to ensure that we treat that conduct in the same way that we treat the conduct now described in the second clause of subsection (b)(6)(B). See U.S. Sentencing Guidelines Manual app. C, amend. 753 (2011) ("Likewise, possessing or transferring a firearm with knowledge, intent, or reason to believe that it would be transported out of the United States is conduct sufficiently similar in seriousness to possessing or transferring a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense to warrant similar punishment."). In doing so, the Commission cited United States v. Juarez, 626 F.3d 246 (5th Cir.

5

2010), in which the Fifth Circuit affirmed the application of both § 2K2.1(b)(5) and § 2K2.1(b)(6) enhancements to the same conduct, namely, the transfer of firearms with reason to believe that they would be illegally smuggled into Mexico. The Commission's stated purpose in amending § 2K2.1(b)(6) and its reliance on <u>Juarez</u> cast doubt on the majority's suggestion that the Commission intended that both § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) would apply to a defendant who transfers firearms with reason to believe that the firearms will be exported, but that only § 2K2.1(b)(5) would apply to a defendant who transfers firearms with reason to believe that the firearms will be used in connection with a felony offense in the United States.

## B.

The second reason to be skeptical of the majority's analysis is that § 2K2.1(b)(5) and § 2K2.1(b)(6)(B) (including the "reason to believe" clause of the latter provision) tackle different harms. <u>See</u> <u>Maloney</u>, 406 F.3d at 153 ("[W]e have consistently held that double counting is permissible in calculating a Guidelines sentence where, as here, each of the multiple Guidelines sections applicable to a single act serves a distinct purpose or represents a discrete harm."). The trafficking enhancement under § 2K2.1(b)(5) applies when a

6

defendant transfers two or more firearms with reason to believe that the firearms would be used unlawfully, whether or not the unlawful use constitutes a felony. Subsection (b)(6)(B) applies if at least one of these firearms is transferred directly or indirectly in connection with a felony; to my mind, the conduct captured by the subsection represents a greater harm and risk of harm than merely using a firearm unlawfully. And I have trouble seeing how a gun trafficker who transfers at least one firearm with "reason to believe" that it would be used in connection with another felony offense is less culpable in any meaningful way than a trafficker who does so directly in connection with another felony offense.

C.

Third, no court has adopted the majority's interpretation of Application Note 13(D). To the contrary, our sister circuits have affirmed the imposition of both enhancements under what appear to be similar circumstances. See, e.g., United States v. Fields, 608 F. App'x 806 (11th Cir. 2015); United States v. Stebbins, 523 F. App'x 1, 2 (1st Cir. 2013).

For these reasons, I would conclude that the two Guidelines provisions and Application Note 13(D) neither clearly permit nor clearly preclude double counting in this case.

## III.

As I explained above, however, our precedent appears to presume that the Commission intends to permit double counting in the absence of a clear bar. <u>See, e.g.</u>, <u>Reyes</u>, 557 F.3d at 87.

In the context of an application note that injects ambiguity, the presumption is simply wrong-headed insofar as it means that textual ambiguity—which may in some cases, as here, overlap with the absence of a "clear" bar against double counting—works to the disadvantage rather than advantage of defendants at sentencing. Such a presumption runs counter to the rule of lenity, which requires that we resolve any relevant ambiguity in Young's favor, not against him.[1] <u>See</u> <u>Robers v. United States</u>, 134 S. Ct. 1854, 1859 (2014) ("[T]he rule of lenity applies only if, after using the usual tools of statutory

---

[1] We have assumed without directly concluding that the rule of lenity applies to advisory (as opposed to mandatory) Guidelines after <u>United States v. Booker</u>, 543 U.S. 220, 259 (2005). <u>See</u> <u>United States v. McGee</u>, 553 F.3d 225, 229 (2d Cir. 2009) (applying the rule of lenity, without analysis, to the advisory Guidelines, citing <u>United States v. Simpson</u>, 319 F.3d 81, 86-87 (2d Cir. 2002) (holding that the rule of lenity applies to the mandatory Guidelines)); <u>United States v. Rivera</u>, 662 F.3d 166, 186 (2d Cir. 2011) (Katzmann, J., concurring) (assuming that the rule of lenity applies to the advisory Guidelines). In my view, the rule of lenity continues to play a vital role in the interpretation of the Guidelines, notwithstanding their advisory nature, because sentencing judges remain procedurally bound to calculate the Guidelines range. <u>But see</u> <u>United States v. Wright</u>, 607 F.3d 708, 716-20 (11th Cir. 2010) (Pryor, J., concurring) (explaining why the rule of lenity should not apply to the interpretation of advisory Guidelines).

construction, [the court is] left with a grievous ambiguity or uncertainty in the statute.") (quotation marks omitted). I would abandon the effort to divine the absence of a clear bar to double counting under the Guidelines. Where, as here, the text of the relevant Guidelines provisions and application note is unclear about whether double counting is permitted, the rule of lenity should apply to foreclose it. I would vacate the sentence and remand on that basis.

For this reason I concur in the judgment with respect to the majority's resolution of the double counting challenge, and I concur fully in its resolution of all the other issues on appeal.