*United States v. Smith*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of September, two thousand twenty-four.

PRESENT:

> DENNY CHIN,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                No. 22-2657

JESSIE SMITH,

> *Defendant-Appellant*,

KENDALL JOHNSON, a.k.a. Duke, TYRELL
SPELLMAN, a.k.a. Rude Boy, SAQUAN
WARLICK, a.k.a. SB,

                    *Defendants.*

_____

**For Defendant-Appellant:**          MICHAEL O. HUESTON, Esq., Brooklyn, NY.

**For Appellee:**          VICTOR ZAPANA (Susan Corkery, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 13, 2022 judgment and October 18, 2022 forfeiture order of the district court are **AFFIRMED**.

Jessie Smith appeals from a judgment of conviction and forfeiture order following his guilty plea to conspiracy to distribute and possess with the intent to distribute heroin, fentanyl, and cocaine base within 1,000 feet of an elementary school in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(iii), 841(b)(1)(C), and 860(a),

and to the substantive offense of distribution and possession with intent to distribute 100 grams or more of heroin, 28 grams or more of cocaine base, and a quantity of fentanyl, within 1,000 feet of the same elementary school in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), 841(b)(1)(B)(iii), 841(b)(1)(C), and 860(a). The district court sentenced Smith to an aggregate 180 months' imprisonment, to be followed by eight years' supervised release, and ordered forfeiture in the amount of $400,000. On appeal, Smith contends that his sentence was both procedurally and substantively unreasonable and that the forfeiture order was unconstitutionally excessive. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review the procedural and substantive reasonableness of a sentence for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Within this structure, we review a sentencing court's factual findings for clear error and its interpretation and application of the Sentencing Guidelines *de novo*. *See United States v. Legros*, 529 F.3d 470, 473–74 (2d Cir. 2008).

## I.    Smith's Sentence Was Procedurally Reasonable

"A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the

Sentencing Guidelines as mandatory, fails to consider the [section-]3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (internal quotation marks omitted). Smith purports to identify several procedural errors, which we address in turn.

*First*, Smith argues that the district court overestimated the quantity of drugs attributable to him by relying on "conjecture" and the testimony of an "unreliable witness." Smith Br. at 31. But it is well established that the government may prove drug weight based on "inference[s]" drawn from "evidence of known quantities, which are sufficiently representative of the unknown quantities and from which an approximation of the unknown quantities can logically be derived." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019). At a two-day *Fatico* hearing, Jose Martinez, a cooperating witness who shuttled customers to Smith, testified that he learned of Smith's drug dealing "[b]y living there, seeing him every day, from morning to night." Smith App'x at 327. Martinez provided daily estimates of Smith's drug sales, which the district court reasonably relied on to extrapolate the total quantity of drugs that Smith sold

4

during the conspiracy. *See United States v. Blount*, 291 F.3d 201, 215–16 (2d Cir. 2002) (upholding drug quantity extrapolated from evidence of weekly sales).

Smith insists that Martinez was a "wholly unreliable" witness since he was a habitual drug user and was receiving cooperation credit from the government. Smith Br. at 13. But the district court heard Martinez's testimony firsthand and found him credible – a determination to which we must give "special deference" on appeal. *United States v. Smith*, 967 F.3d 198, 215 (2d Cir. 2020). And as we have previously explained, testimony by a witness like Martinez, who "personally observed the [defendant's] sales . . . and had personal knowledge of the volume of business conducted[,] . . . is precisely the type of specific evidence upon which a district court may rely in making a sentencing determination." *United States v. Moreno*, 181 F.3d 206, 214 n.3 (2d Cir. 1999). Reliance on such testimony was all the more appropriate here, given that Martinez's estimates were corroborated by intercepted communications, video recordings, and the grand jury testimony of other witnesses.

Smith also objects that the district court inappropriately calculated his base offense level to be much higher than that of his co-conspirators. But, Smith "ran the organization," and the sentencing court thus "was not required to view [Smith]

5

in the same light as [his] co[-]conspirators" who "were subordinate to [him]."

*Blount*, 291 F.3d at 217. Smith further asserts that the district court impermissibly

held him responsible for drug quantities attributable to other individuals involved

in what the district court characterized as a "24/7, 365 operation." Smith App'x at

429. But there is nothing in the record to suggest that the district court improperly

considered the activities of others who acted independently of Smith. *See id.* at

327–28 (showing that Smith sold drugs from 6:00/7:00 AM until 12:00/1:00 AM

every day). Accordingly, the quantity of drugs that the district court attributed to

Smith is amply supported by the evidence at the *Fatico* hearing. *See* Smith App'x

at 429–30.

*Second*, Smith disputes the three-level enhancement he received for being

the "manager or supervisor" of "criminal activity [that] involved five or more

participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). But the evidence at

the *Fatico* hearing amply demonstrated that Smith's conduct qualified for the

enhancement. Martinez testified that ten to twenty different intermediaries sent

customers to Smith, one individual regularly cooked cocaine for Smith, another

individual tested drugs for him, and at least three co-conspirators sold drugs for

him. *See* Smith App'x at 330–31, 344–45, 348, 351–52. Additionally, Martinez

6

himself tested drugs for Smith and acted as a conduit for customers to contact Smith. *See id.* at 347, 317–18. The record clearly reflects that Smith "exercise[d] some degree of control over others involved in the commission of the offense." *United States v. Payne*, 63 F.3d 1200, 1212 (2d Cir. 1995); *see, e.g.*, Smith App'x at 226, 342–43; Gov't App'x at 42, 176. Based on that evidence, the district court explicitly found that "Mr. Smith ha[d] an ongoing drug business" and that he "had relationships" with individuals who sent him customers, cooked crack cocaine, and otherwise assisted him. Smith App'x at 415.

While Smith faults the district court for failing to make more specific factual findings on the record, the district court "explicitly adopt[ed] the factual findings set forth in the presentence report," which we have held to be sufficient. *United States v. Carter*, 489 F.3d 528, 539 (2d Cir. 2007); *see also* PSR at ¶¶ 6–7, 13 (identifying four other members as Saquon Warlick, Tyrell Spellman, Kendall Johnson, and an "unindicted individual who shot at rivals of Smith's drug-trafficking organization"). Because those findings were well supported by the evidence introduced at the *Fatico* hearing, we cannot say that the district court erred in applying the three-level enhancement to Smith.

*Third*, Smith contends that the district court erred in calculating his criminal history category by including two youthful offender adjudications and by declining to depart downward. Smith confuses U.S.S.G. § 4A1.2, which governs this case, with § 4B1.2, which applies to career offenders. Under section 4A1.2(d)(2)(A), two criminal history points are added "for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." For each of the youthful offender adjudications at issue here, Smith was sentenced to a year in prison and released less than five years before the conduct to which he pleaded guilty here began. *See* Gov't Br. at 47. It is therefore irrelevant whether youthful offender adjudications are considered adult or juvenile sentences. *See United States v. Matthews*, 205 F.3d 544, 548–49 (2d Cir. 2000) (holding that a youthful offender adjudication may be included in calculating a defendant's criminal history category). They were properly included in determining Smith's criminal history category.

Smith alternatively argues that the district court erred in not granting a downward departure under U.S.S.G. § 4A1.3(b)(1). But "where a defendant has not shown a violation of law or misapplication of the Guidelines, refusal to depart

8

warrants vacatur only if the defendant points to clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority." *United States v. Young*, 811 F.3d 592, 599 (2d Cir. 2016) (alterations and internal quotation marks omitted). Smith has not done so here. He simply asserts that "the district court misapprehended the scope of his authority because it included youthful offender adjudications." Reply Br. at 13. As explained above, the district court properly included the youthful offender adjudications, and there is nothing in the record, let alone clear evidence, to suggest that the district court misapprehended its *departure* authority. As a result, the "refusal to downwardly depart is not reviewable on appeal." *United States v. Desena*, 260 F.3d 150, 159 (2d Cir. 2001).

*Fourth*, Smith argues that his sentence is procedurally unreasonable because, in his view, the district court did not properly weigh the 18 U.S.C. § 3553(a) factors. Specifically, Smith maintains that the district court failed to consider his mitigating circumstances and the fact that his co-conspirators received lower sentences. But we "presume that a sentencing judge has faithfully discharged [his] duty to consider the statutory factors" and "do not require robotic incantations that the district court has considered each of the § 3553(a) factors" or that the district court "make specific responses to points argued by counsel in connection with

9

sentencing." *United States v. Wagner-Dano*, 679 F.3d 83, 89 (2d Cir. 2012) (internal quotation marks omitted). In any event, the record reflects that the district court considered Smith's difficult childhood as a mitigating factor. *See* Smith App'x at 416. Furthermore, section 3553(a) "does not require a district court to consider disparities among co-defendants." *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). We therefore see no basis to conclude that the district court erred in weighing the 3553(a) factors.

## II. Smith's Sentence Was Substantively Reasonable

Smith also asserts that his sentence was substantively unreasonable. We will set aside a district court's sentence as substantively unreasonable "only in exceptional cases where [its] decision cannot be located within the range of permissible decisions," including where the sentence is "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice." *United States v. Thavaraja*, 740 F.3d 253, 259 (2d Cir. 2014) (internal quotation marks omitted).

Far from being "shockingly high," Smith's 180-month aggregate sentence fell within the Guidelines range of 168 to 210 months' imprisonment. "Although we do not presume that a Guidelines sentence is reasonable, we have recognized

that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008) (internal quotation marks omitted).

Smith nevertheless contends that the district court "was improperly tarred by the residual effects" of the parties' dispute over whether to apply an upward departure based on three overdose deaths attributable to Smith's drug sales, even though the court did not ultimately depart from the Guidelines range. Smith Br. at 45. But a sentencing court is free to "consider the risk of death from use of drugs in assessing the seriousness of the offense conduct," even if the government cannot establish the but-for causation necessary for an upward departure. *See United States v. Ulbricht*, 858 F.3d 71, 125–26 (2d Cir. 2017); *see also Payne v. Tennessee*, 501 U.S. 808, 825 (1991) ("Courts have always taken into consideration the harm done by the defendant in imposing sentence.").

The district court was therefore justified in observing that it was "quite likely" that Smith's drug sales led to one or more of the three overdose deaths. Smith App'x at 415–16. The district court was also permitted to consider the general impact of Smith's activity on the community, including that "[p]eople [are]

dying on the streets with this garbage." *Id.* at 425. As the government noted in its sentencing submissions, "[t]he instances of fentanyl-related overdose deaths have spiked in recent years, and experts attribute the spike in part to the illegal mixing of fentanyl and heroin – conduct the defendant performed for years." Dist. Ct. Doc. No. 217 at 23. The record reflects that Smith knew his drugs were potentially lethal, as evidenced by his decision to temporarily stop selling after one of his daily customers overdosed. *See* Gov't App'x at 186. At the same time, Smith's customers "did not know that fentanyl was in the product," *id.* at 184, demonstrating the recklessness of his conduct. The district court thus did not err in considering the deadly nature of Smith's drug enterprise.

Smith also asserts that his sentence was substantively unreasonable because it treated him as "exceptional" compared to his co-conspirators, included "inflated criminal history," and did not adequately reflect the mitigating factors raised by defense counsel. Smith Br. at 45–46. These arguments primarily repeat the procedural unreasonableness challenges that we have already rejected above. They fare no better when styled as substantive challenges.

In the end, Smith simply disagrees with the district court's assessment of the weight to be given to the section 3553(a) factors. But "[t]he particular weight to be

12

afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge, with appellate courts seeking to ensure only that a factor can bear the weight assigned it under the totality of circumstances in the case." *United States v. Solis*, 18 F.4th 395, 405 (2d Cir. 2021) (internal quotation marks omitted). In light of the evidence before us, we cannot say the district court's sentence was substantively unreasonable.

## III.   Smith's Forfeiture Judgment Was Not Excessive

Smith finally argues that the district court's forfeiture order constitutes a constitutionally excessive fine. We resolve such challenges in a two-step inquiry, determining first, whether the Eighth Amendment's Excessive Fines Clause applies at all, and second, whether the forfeiture order is unconstitutionally excessive. *United States v. Viloski*, 814 F.3d 104, 108–09 (2d Cir. 2016). "[W]e determine *de novo* whether a fine is constitutionally excessive, although we must accept the [d]istrict [c]ourt's factual findings unless clearly erroneous." *Id.* at 109 (internal quotation marks omitted). The defendant bears the burden of showing the forfeiture was unconstitutional. *See United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010).

At the first step, the government argues that the forfeiture of drug proceeds is not punitive and that the Excessive Fines Clause does not apply at all. Because this is an unsettled question in this Circuit, *see Viloski*, 814 F.3d at 109 n.7 (suggesting that a forfeiture of drug proceeds is punitive when the government moves against the defendant "personally" rather than "against the proceeds themselves"), we assume that the Excessive Fines Clause does apply and proceed to step two. A forfeiture order "is unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" *Id.* at 110 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). To determine gross disproportionality, we consider four factors: "(1) the essence of the crime of the defendant . . . , (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct." *Id.*

Smith fails to demonstrate that the forfeiture imposed in this case was grossly disproportional to his offense. First, the essence of Smith's crime was leading a long-running drug-trafficking operation. Based on Martinez's testimony at the *Fatico* hearing, it can be reasonably estimated that Smith received at least

14

$715,550 from his drug sales. *See* Gov't Br. at 24–25; *see also United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011) ("[D]istrict courts may use general points of reference as a starting point for a forfeiture calculation and make reasonable extrapolations supported by a preponderance of the evidence." (internal quotation marks omitted)). Second, Smith is precisely the type of defendant that this drug-trafficking statute was designed to cover. Third, the potential maximum statutory fine of $5,000,000 for each count dwarfs the forfeiture order here. *See United States v. Varrone*, 554 F.3d 327, 332 (2d Cir. 2009) ("[I]f the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."). Fourth, as noted by the district court, the nature of the harm was extensive: Smith sold potentially lethal drugs in a public-housing facility and near a public school, forcing innocent individuals and families to live in fear in their own community. *See* Smith App'x at 341 (recounting how residents of the public-housing facility had to avoid using the stairs where Smith carried out his drug dealing). For all these reasons, the district court's forfeiture order was not grossly disproportional.

\* \* \*

15

We have considered Smith's remaining arguments and found them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court